BROWN, Chief Judge.
| plaintiffs, Carolyn Scranton, Christine Odom and Rachelle Jones, appeal a trial court decision dismissing their reconven-tional demand alleging acts of legal malpractice as being perempted against their former attorney, defendant in reconvention, H.F. Sockrider Jr. For the reasons set forth herein, we reverse.
Facts and Procedural History
Plaintiffs, Carolyn Scranton, Christine Odom and Rachelle Jones, residents of California, each inherited, inter alia, an undivided one-fourth of an undivided one-third interest in 206.33 acres, more or less, of land in Bossier Parish, Louisiana from the estate of Henry Jefferson.[1]
In 2008, Chesapeake Operating, Inc. (“Chesapeake”), hired Ashley Ann Energy L.L.C. (“Ashley Ann”), a lease broker, to obtain mineral leases for Chesapeake covering acreage believed to be productive from the Haynesville Shale. Lydia Gunn, a landman employed by Ashley Ann, negotiated mineral leases from defendant, H.F. Sockrider, covering his personal property as well as several of his neighbors. During this time, defendant attempted to bring together the largest number of lessors possible in order to obtain more favorable terms for the landowners. One of his neighbors involved, Dorothy Butler, had inherited from the estate of Henry Jefferson and assisted defendant in locating other heirs with mineral interests, including plaintiffs. Butler sent plaintiffs a letter dated August 18, 2008, advising that she had retained defendant to represent her in securing a lease for her interest in the property from the Jefferson estate and that | ¿plaintiffs should do the same. ' Sock-rider provided Butler with retainer contracts to include with her letter.
On August 25, 2008, defendant had Gunn prepare and sign a letter to plaintiffs outlining the agreement he had negotiated prior to being retained by plaintiffs. Ashley Ann, on behalf of Chesapeake, agreed to make a bonus payment of $20,000 per mineral acre as well as one-fourth royalty rate for a three-year lease with a two-year option. The letter also noted that Ashley Ann had agreed to pay each lessor “95% percent of your interest and Mr. Sockrider 5% of your interest” in the bonus payment. Defendant mailed the letters to plaintiffs, who then signed and returned his retainer contracts.
Defendant felt it necessary to obtain a judgment of possession from the succession in order to lease plaintiffs’ mineral interests. Plaintiffs obtained the judgment of possession on October 1, 2008, but the following day Gunn informed defendant that Chesapeake had instructed Ashley Ann to cease making further leases. On October 6, 2008, Sockrider met with Calvin Beasley, owner of Ashley Ann. Beasley agreed that he would honor the original agreement and would have Gunn complete the leases and payments to the heirs. Gunn later confirmed to defendant the terms of the agreement, with the modification that the bonus payments to plaintiffs would be deferred until January 15, 2009. On October 8, 2008, Beasley signed and sent each plaintiff a lease agreement. In an October 9, 2008, letter to plaintiffs, Gunn explained “this agreement commits you to lease your mineral interests with *1177 Ashley Ann Energy, and it commits Ashley Ann Energy to execute the lease and make your bonus payment.”
laBefore plaintiffs received the lease agreements to sign and return, Gunn telephoned each on October 13 and 14, 2008, instructing them to “tear up the agreement” when it arrived and “that Chesapeake would not be able honor the 01/15/09 commitment.” Defendant advised plaintiffs that their agreements with Ashley Ann were binding and any attempts to revoke the agreements orally were ineffective. He further instructed plaintiffs to sign the agreements and have their signatures notarized. Plaintiffs complied with these instructions, and on October 28, 2008, defendant recorded the agreements in the conveyance records of Bossier Parish. On October 30, 2008, defendant delivered the agreements to Ashley Ann.
Sockrider wrote to Beasley on October 30, 2008, and December 3, 2008, making amicable demand that Ashley Ann and Chesapeake honor their commitments to plaintiffs. Beasley made no response to these demands, and no payment was made to plaintiffs or defendant on January 15, 2009. Defendant then wrote to plaintiffs on January 30, 2009, asking whether they wished to pursue legal action to enforce the agreements “which were orally revoked, but not revoked in writing.” On February 4, 2009, plaintiffs wrote to Sock-rider agreeing to sue Chesapeake and Ashley Ann and requesting that he recommend two attorneys with oil and gas experience to handle the suit. While plaintiffs dispute whether defendant made a timely recommendation, in July 2009, they hired attorneys Peirce Hammond and Guy Wall to represent them in the lawsuit.[2]
|40n October 1, 2009, plaintiffs filed suit against Ashley Ann, Chesapeake, Beasley and Gunn alleging a breach of the August 25, 2008, letter and the agreements to lease, as well as intentional and negligent misrepresentation. On November 13, 2009, Sockrider filed a petition of intervention in the suit seeking recovery of the 5% payment due to him under the agreement to lease.[3] On February 4, 2010, plaintiffs filed their self-styled “Plaintiff’s Exception, Answer, Affirmative Defenses and Reconventional Demand to Petition of Intervention.” Therein, plaintiffs claimed that defendant had committed multiple acts of legal malpractice. Specifically, they alleged that:
Sockrider was negligent in his representation of plaintiffs by failing to negotiate and obtain for plaintiffs an enforceable agreement by defendants to pay plaintiffs a mineral lease bonus, by failing to notify plaintiffs promptly and timely of all offers, by failing to accept promptly and timely offers made by Ashley Ann and/or Chesapeake and by other acts of negligence to be shown at trial.
They also alleged that defendant was negligent in recording plaintiffs’ agreements to lease in the conveyance records of Bossier Parish, thereby clouding their title and hampering their ability to obtain a new mineral lease.[4] On February 3, 2011, *1178 defendant filed a peremptory exception of peremption and/or prescription arguing that plaintiffs’ claims were untimely.
|sThe trial court held a hearing on defendant’s exception on May 2, 2011, and on May 10, 2011, the court sustained the exception and dismissed with prejudice all of plaintiffs’ claims against Sockrider. Holding that plaintiffs’ claims had perempted, the court reasoned that:
[I]n mid-October 2008 or January 15, 2009, at the latest, plaintiffs had constructive knowledge — that is, enough information to excite attention, place them on guard and call for reasonable inquiry, all as set forth by law — that either the companies had violated their duties or their counsel had violated his, or both.
The court also rejected plaintiffs’ argument that La. C.C.P. art. 1067 served to extend the prescriptive or peremptive period under La. R.S. 9:5605 for their claim.[5] Thereafter, plaintiffs filed this timely appeal.

Discussion

Plaintiffs make several assignments of error on appeal. The primary issue we must address is not the merits of plaintiffs’ malpractice claims, but rather whether those claims have perempted under law.[6] Therefore, we must first examine the trial court’s finding that the peremptive period for plaintiffs’ claims began in “mid-October 2008 or January 15, 2009, at the latest.”

Peremption of Legal Malpractice Claims

The party raising an exception of prescription or peremption ordinarily bears the burden of proof at the trial of a peremptory exception. McKinley v. Scott, 44,414 (La.App.Cir.2d 07/15/09), 17 So.3d 81, 83. However, when prescription is evident from the face of the pleadings, the plaintiff bears the burden of showing the action has not prescribed. Id. When evidence is introduced at the hearing on the peremptory exception, the factual conclusions of the district court are reviewed under the manifest error-clearly wrong standard of review.[7] McGuire v. Mosley Rogers Title Co. L.L.C., 43,554 (La.App.2d Cir.09/17/08), 997 So.2d 23, 28, writ denied, 08-2728 (La.01/30/09), 999 So.2d 757. La. R.S. 9:5605 governs claims for legal malpractice in Louisiana.[8] A straightforward *1179 reading of the |7statute provides that an action for legal malpractice must be brought within one year of the date of the act, omission, or neglect, or within one year of discovering the act, omission, or neglect and within three years of the date of the act, omission, or neglect. La. R.S. 9:5605; Jenkins v. Starns, 11-1170 (La.01/24/12), 85 So.Sd 612. The date of discovery from which prescription or per-emption begins to run is the date on which a reasonable person in the position of the plaintiff has, or should have, either actual or constructive knowledge of the damage, the delict, and the relationship between them sufficient to indicate to a reasonable person he or she is the victim of a tort and to state a cause of actions against the defendant. Teague v. St. Paul Fire and Marine Ins. Co., 07-1384 (La.02/01/08), 974 So.2d 1266; Campo v. Correa, 01-2707 (La.06/21/02), 828 So.2d 502.
The trial court held that plaintiffs had constructive knowledge of their claims against defendant either when Gunn telephoned to tell them to tear up the lease agreements or after no payment was made on January 15, 2009. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Teague, supra at 1276. However, a plaintiffs mere apprehension that something may be wrong is insufficient to commence the running of prescription unless the plaintiff knew or should have known through the exercise of reasonable diligence that his problem may have been caused by acts of malpractice. Id. at 1275; Beach v. Continental Casualty Co., 09-108 (La.App. 3d Cir.06/03/09), 11 |8So.3d 715. Further, the supreme court in Teague, 974 So.2d at 1278 cautioned:
Knowledge of a bad result does not necessarily include knowledge of the cause or reason of the bad result. Although the bad result is part of the overall malpractice equation, most often the reason or cause of the bad result constitutes the actual act of malpractice. To hold that peremption commences from the date of the knowledge of a bad result would precipitate lawsuits unnecessarily to preserve rights. An investigation might prove the absence of any malpractice or that the result was not caused by the defendant’s negligence. Rather, we find it is the knowledge of the cause or reason for the undesirable result that commences the running of peremption when such knowledge is not self-evident from the bad result. (Emphasis added).
In the case sub judice, plaintiffs had neither actual nor constructive knowledge of the existence of any substandard *1180 legal practice and had no evidence to connect the adverse outcome, failure by Chesapeake to make bonus payments, with acts of alleged legal malpractice by their attorney. Defendant never suggested that his actions may have had some effect on plaintiffs’ ability to obtain a bonus payment.[9] Instead, defendant advised plaintiffs that Chesapeake and Ashley Ann were in breach of the August 25, 2008, agreement as well as the agreements to lease. The record reveals that the only communication plaintiffs received from Ashley Ann and Chesapeake was on October 13 and 14, 2008, when they were telephoned by Gunn who told them that Chesapeake would not be able honor its agreement. This occurred, according to a February 13, 2009, letter from ^defendant to plaintiffs, not because of any mistake on his part but rather because Chesapeake was “financially broke” and “simply telling their attorneys to drag everything out as long as they can” in an attempt to eventually renegotiate their contracts.
Defendant further instructed plaintiffs to complete the agreements to lease following Gunn’s phone call, because, as he explained to plaintiffs, under Louisiana law such an offer must be revoked expressly rather than orally. Plaintiffs followed his counsel, and defendant made amicable demand upon Ashley Ann in October 2008 to honor the lease agreements, which denoted January 15, 2009, as the date bonus payments would be made. A thorough review of the record discloses that there was no evidence of malpractice made available to plaintiffs from either Ashley Ann and Chesapeake or defendant.[10] Plaintiffs did not discover any acts of malpractice until they were revealed by virtue of an investigation into the matter by other counsel who had mineral law experience. Plaintiffs had no knowledge of Louisiana mineral law.[11] The only issue of which plaintiffs had evidence was that a bad result occurred, that Chesapeake did not honor its agreement.
| ¶ (/Therefore, the record lacks sufficient evidence to hold that plaintiffs had knowledge of the cause or reason for the undesirable result of not receiving their bonus payment. Plaintiffs reasonably relied on the alleged erroneous advice of their attorney, Sockrider, and did not gain constructive knowledge of the damage, delict and the relationship between the two until July 2009 when they retained new counsel to pursue the breach of contract claim.
Plaintiffs also claim that they were damaged by defendant’s recordation of the agreements to lease on October 28, 2008, *1181 which placed a cloud on the title, stymieing their ability to obtain a new lease. The trial court held that recordation of the leases was “a matter of public record and constituted notice to the plaintiffs, their lawyers, all landmen, mineral companies, and the world.” This is clear error. Whether the world knew of the recordation is not relevant as to plaintiffs’ knowledge that this was an act of malpractice. There is no evidence in the record that plaintiffs were even aware that leases had been recorded in October 2008. More importantly, they did not discover the damage, the delay in being able to secure a new lease, until their new counsel attempted to secure a new lease and informed them of the impediment. Plaintiffs, therefore, had no reason to call for inquiry while being represented by Sockrider. The date of discovery for this separate cause of action occurred, at the earliest, when plaintiffs retained new counsel in July 2009.
Because the bad result was not self-evident of the malpractice involved, we find peremption did not begin to run until July 2009 when | ^plaintiffs hired new attorneys. Their claims for legal malpractice were therefore not perempted as of February 4, 2010, when the reconventional demand was filed and would not have per-empted until July 2010.
Finally, there is an issue of plaintiffs’ claims for so-called “pre-hiring acts of negligence” by defendant. Specifically, they argue that Sockrider dictated the terms of the August 25, 2008, letter from Gunn to plaintiffs and that he mailed it anonymously to plaintiffs. They claim this was a misrepresentation and fraudulent inducement to sign retainer contracts. Defendant did not reveal that he had asked Gunn to write, sign and hand over the letter for him to mail to plaintiffs on August, 25, 2008, until his December 2, 2010, deposition.
Defendant argues that all of his actions prior to plaintiffs signing their retainer contracts on September 9, 2008, were done on behalf of his clients and potential clients. He notes that his “actions in negotiating the agreement with Gunn arose out of an engagement, by Dorothy Butler, to provide legal services in the interest not only Dorothy Butler, but also the plaintiffs.” The record reveals that Butler sent plaintiffs letters on August 18, 2008, suggesting they retain Sock-rider. There is no evidence that Butler hired defendant to represent plaintiffs. Notwithstanding the validity of these claims, plaintiffs did not discover that it was defendant who had sent the letter until his December 2, 2010, deposition. Further, as there was no attorney-client relationship at the time the letter was prepared and sent, La. |iaR-S. 9:5605 does not govern the cause of action.[12] Therefore, these claims were not perempted or prescribed as of the February 4, 2010, pleading.

Status of Plaintiffs’ Reconventional Demand

Addressing whether defendant’s intervention triggered a suspension of per-emption or whether the intervention served to extend or revive a perempted claim, the trial court ruled that plaintiffs’ *1182 claim against defendant was in the nature of a cross-claim rather than a reconven-tional demand.[13] We note that every pleading shall be so construed as to do substantial justice. La. C.C.P. art. 865. The caption of the pleading does not control; the court is obligated to determine the substance of the pleading. Smith v. Cajun Insulation Inc., 392 So.2d 898 (La. 1980); Steed v. St. Paul’s United Methodist Church, 31,521 (La.App.2d Cir.02/24/99), 728 So.2d 931, writ denied, 99-0877 (La.05/07/99), 740 So.2d 1290. Having already found that peremption would not occur in this case until July 2010, we need not address the trial court’s ruling on this issue. A cross-claim, likewise a reconventional demand, was not perempted at the time plaintiffs filed their pleading.
Plaintiffs urge also that the trial court erred in ruling that under the circumstances of this case, an incidental demand does serve “to extend the | ;s90-day period envisioned by La. C.C.P. art. 1067; further, the exception of prescription and per-emption set forth in article 1067 [sic] does not revive a perempted claim.” For the same reasons as above, we need not address the effect of La. C.C.P. art. 1067 on plaintiffs’ demand as plaintiffs’ claims had not yet perempted.

Admissibility of Defendant’s Pretnal Deposition

Finally, plaintiffs argue that the trial court erred in not allowing the December 2, 2010, deposition of defendant into evidence at the trial on the peremptory exception. Plaintiffs’ counsel attempted to introduce the deposition into evidence following his examination of defendant at the hearing on the exception. He wished to introduce the deposition because it would give “a complete overview of the case.” The trial court denied the request to admit the deposition, reasoning that there was no impeachment purpose for admitting the deposition. The trial court opined that “Mr. Sockider was called to the stand, he was examined by Mr. Richard on direct examination and then was cross examined in some detail by Mr. Wall as to the issues that are relevant to the peremptory exception.”
The trial court is granted broad discretion in its evidentiary rulings, which will not be disturbed on appeal absent a clear abuse of that discretion. Wimberly v. Giglio, 46,000 (La.App.2d Cir.01/26/11), 57 So.3d 389; Graves v. Rivenvood Intern. Corp., 41,810 (La.App.2d Cir.01/31/07), 949 So.2d 576, writ denied, 07-0630 (La.05/04/07), 956 So.2d 621. On appeal, the court must consider whether the complained of ruling was | Herroneous and whether the error affected a substantial right of the party. If not, reversal is not warranted. Id.
La. C.C.P. art. 1450 which governs the use of depositions under these circumstances provides, in pertinent part:
A. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Louisiana Code of Evidence applied as though the witnesses were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
(1) Any deposition may be used by any party for the purpose of contradicting or *1183 impeaching the testimony of deponent as a witness.
(2) The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Article 1442 or 1448 to testify on behalf of a public or private corporation, partnership, or association, or governmental agency which is a party may be used by an adverse party for any purpose.
While some circuits have construed this statute to allow a party to admit the deposition of an adverse party for any purpose, this court has traditionally construed this provision more strictly. Orea v. Scallan, 32,622 (La.App.2d Cir.01/26/00), 750 So.2d 488. The provision creates discretion in the trial court to refuse to admit into evidence the discovery deposition of an adverse part when it is repetitious of matters contained in the record. Simms v. Progressive Ins. Co., 38,804 (La.App.2d Cir.09/29/04), 883 So.2d 473, writ denied, 04-2871 (La.01/28/05), 893 So.2d 78; Orea, supra.
Here, the trial court denied admitting the December 2, 2010, deposition into evidence because there was no impeachment purpose, rejecting plaintiffs’ general overview purpose. The record reveals that 1^plaintiffs’ counsel was given ample opportunity to examine defendant. Further, defendant testified generally to all the issues contained within the deposition. Therefore, we find no error in the trial court’s decision to exclude the deposition testimony.
Peremptory Exception — No Cause of Action
On appeal, defendant for the first time raises a peremptory exception of no cause of action, asking that plaintiffs’ claims of alleged pre-hiring acts of negligence against him be dismissed with prejudice.[14] Defendant argues that plaintiffs failed to plead facts alleging acts of negligence prior to his being retained by them. Defendant also argues, in the alternative, that if plaintiffs were not clients when they allege he made a misrepresentation, namely the August 25, 2008, letter from Gunn, and fraudulently induced them to sign retainer agreements, then he owed no duty to plaintiffs. Therefore, he avers, plaintiffs fail to establish a cause of action against him under tort principles. Plaintiffs argue that sufficient facts were pled and that the pleadings have been expanded by other evidence. They request that should this court find in favor of defendant, they should be allowed to amend their pleading to state a cause of action for general negligence.
The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition, which is done by determining whether the law affords a remedy on the facts alleged in the pleading. Ramey v. DeCaire, 03-1299 (La.03/19/04), 869 So.2d 114; Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234 (La.1993). A cause of action, in the context of a peremptory exception, is defined as the operative facts that give rise to the plaintiffs’ right to judicially assert an action against a defendant. Id. The issue at the trial of the *1184 exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Ramey, supra.
The record reveals that nowhere in the February 4, 2009, pleading reconvening against defendant did plaintiffs allege that he made a misrepresentation by anonymously sending the letter. They failed to allege facts of any acts of pre-hiring negligence but rather only alleged acts of legal malpractice.[15] These negligent pre-hiring acts were not alleged until plaintiffs filed their memorandum in opposition to defendant’s original peremptory exception of prescription and/or peremption. Defendant correctly notes that they responded to these claims as being “far beyond the scope of the pleadings” in their reply to plaintiffs’ memorandum in opposition.
However, the Supreme Court has held “[i]f there are two or more items of damages or theories of recovery which arise out of the operative facts of a single transaction or occurrence, a partial judgment on an | ^exception of no cause of action should not be rendered to dismiss one item of damages or theory of recovery.” Everything on Wheels Subaru, Inc., 616 So.2d at 1239. Here, plaintiffs argue that they offer multiple theories of recovery, namely, one being in legal malpractice and the other in general negligence which both concern the August 25, 2008, letter.
When it is reasonably possible, the court should maintain the petition against the peremptory exception no cause of action so that the litigant is afforded the opportunity to have his or her day in court to present evidence.[16] Arledge v. Hendricks, 30,588 (La.App.2d Cir.06/26/98), 715 So.2d 135, unit denied, 98-2015 (La.11/20/98), 728 So.2d' 1287. Further, La. C.C.P. art. 934 provides that when the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court.
The trial court made no specific ruling regarding the substantial nature of any pre-hiring acts of negligence, but instead focused only on whether the claims had perempted and the procedural status of plaintiffs’ demand. Plaintiffs failed to allege sufficient facts in their reconventional demand to support a cause of action for general negligence against defendant in their February 4, 2010 pleading. The peremptory exception of no cause of action is sustained. However, as defendant only now for the first time raises a peremptory exception of no cause of action regarding | iSthese claims, we grant plaintiffs’ request to amend their pleading, pursuant to La. C.C.P. art. 934, to allege sufficient facts to state a cause of action for general negligence against defendant.

Conclusion

For the reasons set forth above, the judgment of the trial court is reversed. Defendant’s peremptory exception of no cause of action is sustained, but plaintiffs *1185 are granted leave to amend their original petition. This case is remanded for further proceedings not inconsistent with this opinion. Costs of appeal are assessed against appellee, H.F. Sockrider Jr.
REVERSED AND REMANDED.
APPLICATION FOR REHEARING
Before BROWN, STEWART, CARAWAY, DREW, and LOLLEY, JJ.
Rehearing denied.

. Geneva Williams inherited the remaining one-fourth interest in the one-third interest in the 206.33 acres, but is not a party to the present legal malpractice claims.

. Defendant wrote to plaintiffs on August 5, 2009, explaining that he and Geneva Williams had selected the late Dewey Burchett to represent them. He advised that plaintiffs could terminate their present counsel and retain Burchett. Defendant attached the necessary paperwork to do so with his letter.

. Geneva Williams also intervened with Sock-rider.

.After having the recordation cancelled on April 25, 2010, plaintiffs were able to agree to lease their mineral interests to Petrohawk Properties, LP, for a bonus payment of $7,500.00 per mineral acre with a one-fourth royalty rate.

. The trial court opined that "Williams and Sockrider did not name plaintiffs as defendants in intervention and therefore the plaintiffs could not procedurally file a reconven-tional' demand against Sockrider." The trial court further noted that rather than being a reconventional demand "plaintiffs’ claim on this incidental demand leg of this lawsuit is in the nature of a cross-claim.”

. We note that the trial court granted the peremptive exception before a resolution was reached on the merits of the breach of contract claim.

. The Supreme Court has articulated a two-part test for the reversal of a fact finder’s determinations: 1.) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and 2.) the appellate court must further determine that the finding is clearly wrong (manifestly erroneous). Stobart v. State Through Dept. of Transp. and Development, 617 So.2d 880 (La. 1993). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse, even though convinced that, had it been sitting as the trier of fact, it would have weighed evidence differently. Id.

.La. R.S. 9:5605 provides, in pertinent part:
A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall *1179 be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

. In Stains, supra, the supreme court held that a plaintiff in that case had constructive knowledge of malpractice when she received notice of a bad result, notice of a default judgment, and she contacted her attorney who then informed her he had made a mistake and would try to fix it. The supreme court in Teague, supra, held a plaintiff did not have constructive knowledge of malpractice from a bad result, which was a case settlement, where the plaintiff's attorneys concealed their negligence which caused the bad result.

. Defendant maintained to plaintiffs that his course of action was legally correct and that it was Ashley Ann and Chesapeake who were in breach. Plaintiffs received no explanation from Ashley Ann or Chesapeake as to why the company would not be able to honor its commitments.

.The ultimate issue is the reasonableness of the person’s action or inaction, in light or his education, intelligence, the severity of the symptoms, and the nature of the defendant’s conduct. Campo, supra, (While addressing an action for medical malpractice, this analysis was adopted by the supreme court in relation to legal malpractice claims in Teague, supra and Jenkins, supra.) Carolyn Scranton is a retired clerical worker. Christina Odom worked as police dispatcher. Rachelle Jones was a self-employed event planner.

. A relationship of client and lawyer arises when a person manifests to lawyer the person’s intent that the lawyer provide legal services for the person. In re Austin, 06-0630 (La. 11/29/06), 943 So.2d 341. The existence of an attorney-client relationship turns largely on the client’s subjective belief that it exists. Id.; Louisiana State Bar Ass’n v. Bosworth, 481 So.2d 567 (La.1986). Plaintiffs did not sign retainer contracts with defendant until September 9, 2008.

. A party by petition may assert as a cross-claim a demand against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action. La. C.C.P. art. 1071.

. An appellate court may consider a peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for decision, and if proof of the ground of the exception appears of record. La. C.C.P. art. 2163. Consideration of such an exception is discretionary with the appellate court. Southern States Masonry, Inc. v. J.A. Jones Const. Co., 507 So.2d 198 (La. 1987); Turner v. State, Dept. of Highways, 137 So.2d 456 (La.App. 2d Cir. 1962).

. Their demand stated:
Sockrider was negligent in his representation of plaintiffs by failing to negotiate and obtain for plaintiffs' an enforceable agreement by defendants’ to pay plaintiffs’ a mineral lease bonus, by failing to notify plaintiffs promptly and timely of all offers, by failing to accept promptly and timely offers made by Ashley Ann and/or Chesapeake and by other acts of negligence to be shown at trial.

. The mo.dern trend of liberality in upholding substantive rights instead of subtle technicalities is to allow amendment to petitions that fail to state a cause of action due to insufficient allegations. Giron v. Housing Authority of City of Opelousas, 393 So.2d 1267 (La.1981); Douglas v. Haro, 214 La. 1099, 39 So.2d.744 (La. 1949).