WILLIAMS, J.
12Plaintiffs, Kailash K. Dhaliwal and the succession of her late husband, Manmohan S. Dhaliwal, appeal the district court’s ruling granting defendants’ peremptory exception of prescription/peremption and motion for summary judgment. The district court also denied plaintiffs’ motion for partial summary judgment. For the following reasons, we reverse and remand this matter to the district court for further proceedings.
FACTS
On February 9, 2011, Dr. Kailash K. Dhaliwal (“Kailash”) and the succession of her late husband, Dr. Manmohan S. Dhali-wal (“Manmohan”) (“plaintiffs”) filed a lawsuit against their son and daughter-in-law, Karminderdal S. Dhaliwal (“Karl”) and Dhillon Sookham (“Sookham”), respectively. Plaintiffs alleged that Kailash, *473 Manmohan and Karl entered into a joint venture to purchase and operate convenience stores in Ouachita Parish.
In their petition, plaintiffs also alleged that Kailash and Manmohan began their careers as salaried professors at Alcorn State University in Mississippi. Manmo-han purchased a vacant commercial lot in Jackson, Mississippi, on which to build a convenience store in 1979. Soon thereafter, Kailash, Manmohan and Karl entered into an oral agreement, pursuant to. which Manmohan deeded equal one-third interests in the vacant lot to himself, his wife and Karl, who was unmarried at that time. The parties were unable to obtain financing to build a convenience store at that location. Therefore, Kailash purchased a leasehold interest and inventory in | (¡another convenience store. According to plaintiffs, Karl was 23 years old, unemployed and fully supported by his parents. Nonetheless, the parties orally agreed that Karl would assume primary responsibility for managing and operating the store on weekdays. Kailash and Manmohan managed the business on weekends, summer vacations and school holidays. Kailash and Manmohan continued to teach and provide capital to the business. Each of the three “partners” worked in the store without pay.
In 1980, the parties sold the original store. That same year, Kailash purchased a larger convenience store. Again, Karl did not contribute any capital toward the purchase. The operation of this store was the same as that of the prior store: Karl operated the store on weekdays; Kailash and Manmohan operated the store on weekends, summer vacation and school holidays. The parties worked without pay; they all agreed to reinvest all profits into the business. The store operated for approximately three years. Thereafter, the parties closed the store and sold the inventory. However, they retained ownership of the location' and began to collect rent from another party.
In 1982, the parties purchased a convenience store, High’s No. 1, in Monroe, Louisiana. The business was licensed in Kai-lash’s name; however, the deed to the property was in Karl’s name. The majority of the purchase price, $155,000, was derived from the rents, sales and profits from the two Mississippi stores; the remaining balance was financed by the seller, Freddy Oliveaux.
LManmohan and Kailash continued to teach in Mississippi, while Karl operated the store in Monroe on weekdays. Subsequently, Manmohan and Kailash granted Karl power of attorney to act in their best interests. Karl handled all of his parents’ electronic banking needs while managing the business. All three “partners” continued to operate the store in the same manner as they operated the Mississippi stores (Karl on weekdays; Manmohan and Kai-lash on weekends, summers and school holidays). According to plaintiffs, they all agreed to reinvest all monies into the business, rather than distributing profits.
Thereafter, the parties purchased a vacant lot in Monroe and built High’s No. 2. In order to finance this purchase, the parties used rental income profits from the Mississippi store and cash contributed by Manmohan and Kailash, who also mortgaged their home.
In 1993, Manmohan and Kailash retired from teaching, moved to Monroe and began working at the stores full-time without pay. They also transferred to Karl commercial and residential real estate in Mississippi and New Mexico. By this time, Karl had married Soókham and began purchasing more and more stores. Over time, Karl, Sookham and/or business entities *474 owned fully or in part by them, acquired 17-19 stores in Ouachita Parish.[1]
After they retired from teaching, Man-mohan and Kailash worked full-time in the first two stores, without pay, until 1999. Manmohan died June |s21, 2010. By this time, Kailash was 87 years old and in frail health. Within days of Manmohan’s death, Karl informed Kailash that he and Sook-ham owned 100% of the convenience store enterprise. At that time, Kailash canceled Karl’s power of attorney.
On February 9, 2011, Kailash and the succession of Manmohan filed a “Petition for Breach of Fiduciary Duty, Wrongful Conversion of Properties, Accounting and Recovery of Damages.”[2] They prayed for a judgment ordering Karl and Sookham “to provide and furnish a detailed accounting of all business of the venture, including all assets, profits, rents and revenues from the inception of ‘High’s No. 1’ convenience store to date, and that all such assets, profits, rents and revenues be declared and adjudged rightfully belonging to. the venture” in which Kailash and Manmohan each owned a one-third interest, “with the remaining one-third interest in such venture owned jointly by defendants,” Karl and Sookham. Plaintiffs also prayed for a judgment against Karl and Sookham, in solido, for “all just sums, losses and damages as are determined fair and just by the trier of fact.”
Subsequently, on May 14, 2012, plaintiffs moved for partial summary judgment, seeking a declaration that Manmohan, Kai-lash and Karl were equal partners in a joint venture. Plaintiffs contended that the parties had |fiunresolved discovery issues.[3] The court ordered defendants to appear on June 14, 2012, and show cause why the motion should not be granted.[4]
On June 14, 2012, a hearing on a motion to compel was held. Thereafter, the hearing on the motion for summary judgment was scheduled for July 6, 2012. Subsequently, on June 19, 2012, defendants filed a peremptory exception of prescription/peremption and a motion for summary judgment. Thereafter, plaintiffs were ordered to appear on July 6, 2012, to show cause why defendants’ motion for summary judgment and exception of preseription/peremption should not be granted.
On July 5, 2012, plaintiffs’ counsel hand delivered to the district court written objections to the trial on the exceptions, contending defendants violated LSA-C.C.P. art. 1571 and Louisiana District Court Rule 9.14 by failing to file a “pink slip,” requesting that the matters be fixed for trial. Plaintiffs’ counsel contended that *475 because the pink slip was not filed, plaintiffs did not learn that the exceptions were fixed for trial until the day before the trial date. According to plaintiffs’ counsel, the district court faxed the order fixing the exceptions for trial to counsel’s office after 8:00 p.m. on July 3, 2012. Counsel argued that by the time the court’s order arrived, his office had closed for the Fourth of July holiday.
|7The court overruled plaintiffs’ objections to fixing the hearing date, and the hearing was conducted on July 6, 2012, as scheduled. In so ruling, the district court stated:
[Plaintiffs’ counsel] had raised [an] objection to addressing the exceptions on the basis that you got faxed notice. That’s on me. I didn’t get into the stack of stuff and sign that until late so I had it faxed, but the summary judgment was known to be set today.
[[Image here]]
And I’ve read your memorandum in opposition to the exceptions. Seems to me-seems to me you addressed the matter.
[[Image here]]
But I want to tell you though I’m not inclined to honor your objection to taking the matter up[.]
[[Image here]]
At the conclusion of the hearing, the court took the exception of prescription/peremption and cross motions for summary judgment under advisement.
On July 12, 2012, the district court issued written reasons for judgment sustaining defendants’ exception of prescription/peremption. The court stated:
The evidence does not show that there was a meeting of the minds resulting in the formation of an oral joint venture or partnership, entitling Plaintiffs to a one-third interest in even the first two Monroe stores, not to mention the other 16 or so stores.
Even if the evidence could somehow be so construed, the delay for suing to claim the two-thirds share of profits Plaintiffs allege they are due has long-since passed. No distribution of profits has ever happened. And Plaintiffs knew the stores were profitable.
Defendants have argued that no oral joint venture was formed or proven and that, even if a joint venture had been formed, Plaintiffs had to timely file to claim any entitlement to profits. The delay for suing for profits 1 ^provided in La. R.S. 12:1502 is not subject to suspension or interruption except by timely filing suit. [LSA-R.S. 12:1502(E) ]. This suit was not timely filed.
In a footnote, the district court stated:
This ruling makes it unnecessary for the Court to write a ruling on either Plaintiffs’ Motion for Partial Summary Judgment or Defendants’ Motion for Summary Judgment. However, if the Court were called upon to rule on these Motions it would DENY Plaintiffs’ motion and GRANT Defendants’ motion.
On July 16, 2012, the court issued a supplemental ruling on the exception of prescription/peremption, stating:
[T]he Court notes that, despite the fact that Plaintiffs sued Karl and Sookham Dhaliwal individually, the evidence showed that the convenience stores largely, if not entirely, are owned and/or operated by corporate entities. For that reason, the Court is persuaded that LSA-R.S. 12:1502, as [it] relates to claims against corporate entities, is applicable, and that the delays for prescription and peremption apply to the facts of this case.
However, the court finds, alternatively, that if [LSA-R.S. 12:1502] does not ap *476 ply, for whatever reason, then it holds that LSA-C.C. art. 3492, relative to tort claims (one year) and LSA-C.C. art. 3499, relative to contract claims (10 years) do apply to the conversion and breach of contract type claims alleged in Plaintiffs’ petition. Applying these Code provisions to the facts found by the Court results in the same outcome: all claims alleged by Plaintiffs have prescribed.
[T]he Plaintiffs’ generosity toward Karl in the form of cash investments, labor, donations of stock and other property and the like was not solely gratuitous, but at least partly onerous. There was an expectation on the part of Karl’s parents that he would help them financially if they fell in need. However, that expectation is not legally enforceable, except to the extent that LSA-C.C. Art. 229 provides that children are obligated to support needy parents.
[[Image here]]
|9On July 30, 2012, plaintiffs filed a motion for new trial, arguing that the district court violated the Code of Civil Procedure and the local rules of court by setting the hearing on the exception of prescription/peremption without requiring defendants to file the requisite pink slip. Thereafter, on August 9, 2012, defendants filed a “Request for Ruling on Summary Judgments,” stating, in part:
[[Image here]]
3.
In the July 12, 2012 ruling, the Court noted that its Ruling on the Exception of Prescription made it unnecessary for the Court to write a ruling with respect to either Plaintiffs’ Motion for Partial Summary Judgment, or Defendants’ Motion for Summary Judgment. The Court noted that if it were called upon to rule upon the Motions, it would DENY Plaintiffs’ motion and GRANT Defendants’ motion.
4.
Although the Court has indicated what it would do with respect to the Motion[s] for Summary Judgment, no formal disposition of the Summary Judgments was ever rendered.
[[Image here]]
6.
If Plaintiffs decide to take an appeal, the Court of Appeal’s review of this matter will be limited to the Exception of Prescription/Peremption, as there has been no formal adjudication of the Summary Judgments, although the Court has already determined the seminal issues therein, and has expressed what it would do were it to rule with respect to the same.
7.
Although Defendants completely agree with the Court’s ruling with respect to the Exception of Prescription/Peremption, it would make sense that the Court issue an additional ruling with respect to the Summary Judgments so that, in the unlikely event the Appellate Court were to find fault with the Prescription ruling, they could then review the Summary Judgment de novo without having to remand the matter for re-urging, | inand without the cost and delay that would come therewith.
[[Image here]]
Following a hearing, the district court denied plaintiffs’ motion for new trial. On September 20, 2012, the court issued a “Judgment on Defendants’ Request for Ruling on Motions for Summary Judgment.” The court stated:
Defendants’ Request for Ruling on Summary Judgment, likewise, came to be heard on August 24, 2012. The court over-ruled plaintiffs’] objections to sum *477 mary judgment rulings requested by Defendants at plaintiff[s’] motion for new trial, as well as plaintiff[s’] objections to summary judgment rulings on the merits, coming after the court had entered judgment on defendants’] peremptory exceptions dismissing plaintiffs]’ claims with prejudice on July 12, 2012. The court, considering evidence, memorandum and arguments of counsel, found ... in favor of defendants’ motion for summary judgment and against plaintiffs’] motion for partial summary judgment.]
* * *
These reasons for judgment were not signed by the district court judge. However, the judge signed a judgment granting defendants’ motion for summary judgment and denying plaintiffs’ motion for partial summary judgment.
Plaintiffs appeal.
DISCUSSION
Plaintiffs contend the district court erred in fixing defendants’ exception of prescription/peremption for trial, without requiring defendants to file the requisite “Pink Slip.” Plaintiffs argue that the court’s decision to fix the trial date violated the provisions of LSA-C.C.P. art. 1571 and 11 Louisiana District Court Rule 9.14, and deprived plaintiffs of the right to prepare for the trial and to present evidence.
Due process at a minimum requires that the deprivation of life, liberty or property be preceded by notice and an opportunity to be heard at a meaningful time. Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); Little v. Pou, 42,872 (La.App.2d Cir.1/30/08), 975 So.2d 666, writ denied, 2008-0806 (La.6/6/08), 983 So.2d 920. The notice given must be reasonably calculated under all circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection. Id.
LSA-C.C.P. art. 1571 requires district courts to prescribe the procedure for assigning cases such that all parties receive adequate notice of trial. LSA-C.C.P. art. 1572 sets forth the procedure that is to be followed by the clerk of district court when a party has filed a .written request to be notified of the trial date. The article provides as follows:
The clerk shall give written notice of the date of the trial whenever a written request therefor is filed in the record or is made by registered mail by a party or counsel of record. This notice shall be mailed by the clerk, by certified mail, properly stamped and addressed, at least ten days before the date fixed for the trial. The provisions of this article may be waived by all counsel of record at a pre-trial'conference.
La. District Court Rule 9.14(a) provides:
(a) The date on which a motion to fix for trial on the merits may be made, and the method of setting a date for trial or hearing of a matter, including deadlines for scheduling orders, pre-trial briefs, contact with jurors, or any other matter, shall be determined by each district court as set forth in Appendix 9.14.
The Fourth Judicial District Court Appendix to Rule 9.14 provides, in pertinent part:
After all parties have answered, made a general appearance, or had a preliminary default entered against them, any party or counsel may request in writing a scheduling/status conference with the civil judge of the assigned Section, by submitting a Return Date/Hearing Cover Sheet (Pink Slip), which may be found at http://www.4jdc.com/forms.htm. The original and one copy of the request shall be delivered to the clerk of court. The clerk shall file the original in the *478 suit record and stamp ‘Filed’ on the copy and round the copy to the civil judge of the assigned Section.
[[Image here]]
The “Pink Slip,” referred to in Rule 9.14, states, in pertinent part, “The filing attorney hereby certifies ... the filing attorney has contacted the anticipated opposing counsel, if known, at least three business days (72 hours) prior to the transmittal of the pink slip to the court[.]”
Trial judges have wide discretion in setting and hearing motions, as in other actions relating to scheduling and docket management, and their decisions in such matters will be set aside by appellate courts only when there has been an abuse of that discretion. See, Beteta v. City of New Orleans, 2006-0972 (La.App. 4th Cir.1/10/07), 950 So.2d 862; Kelley v. Hanover Ins. Co., 98-506 (La.App. 5th Cir.11/25/98), 722 So.2d 1133, writ denied, 98-3168 (La.2/12/99), 738 So.2d 576.
In the instant case, it is undisputed that defendants did not file the requisite pink slip setting their exceptions for trial. However, the record reveals that all counsel were aware that the hearing on all motions had been scheduled for July 6, 2012. At the conclusion of the hearing held on June 14, 2012, the court stated:
112What we’re going to do when we leave here is we’re going to go sit down. We already know [a] response to the plaintiffs’ motion for summary judgment will come in next Tuesday and that the defendants’ motion for summary judgment will be filed next Tuesday. So, figuring from that date which will be the what, the 19th I think, and that’s just a month and four days or something before trial. I’m going to have to shorten the delay within—that would be given to plaintiff to respond to the defense motion. And we’ll fix a date; we’ll fix a date common to all your calendars that I can hear this. It looks like it’s going to be the week—the week before I’ve got to render a decision before we can possibly get everything—all the ducks in a row. And we’ll see. We’ll make it work. We’ll make it work. We have to because I am not—I’m not inclined, gentlemen, to grant any delay in the trial.
[[Image here]]
All right, let’s meet, gentlemen. You all come to my reception office. I will arrange a conference room so we can conference right now with our calendars and my secretary there and all and we’ll get a date for a hearing so that I can get these motions—these cross motions for summary judgment decided ten days before trial.
Thereafter, on June 19, 2012, defendants filed a motion for summary judgment and an exception of prescription/peremption, along with memoranda in support thereof. The order attached to the filings provided that plaintiffs should “show cause on the 6th of July, 2012, at 9:30 a.m., Courtroom 8, why Plaintiffs’ Motion for Summary Judgment and Exception of Prescription / Peremption should not be granted.” As stated above, defendants’ motion, exception and accompanying order were filed on June 19, 2012; however, the order was not signed and faxed to plaintiffs’ counsel by the district court until the afternoon of July 3, 2012.
After reviewing the record and related jurisprudence, we find that the district court did not abuse its discretion in scheduling and conducting the hearing on the cross motions for summary judgment and trial of the |1sexception of prescription/peremption on July 6, 2012. Accordingly, we find no abuse of the district court’s discretion in its denial of plaintiffs’ *479 motion for new trial on that basis.[5] As stated above, the court expressed its desire to hear all pretrial motions and its intent to avoid delaying the start, of trial on the merits. Additionally, notwithstanding the lack of the pink slip, all parties were put on notice as early as June 14, 2012, that the hearing was scheduled on July 6, 2012. Further, the order accompanying defendants’ motion for summary judgment and exception of prescription/peremption, filed June 19, 2012, indicated that the show cause hearing was scheduled for July 6, 2012. Accordingly, we conclude that, in this instance, the failure to file the pink slip did not abridge plaintiffs’ due process rights. This assignment lacks merit.
Plaintiffs also contend the district court erred in granting summary judgment in favor of defendants and in denying plaintiffs’ motion for partial summary judgment. Plaintiffs argue that the parties entered into a joint venture, whereby Kai-lash and Manmohan invested large amounts of cash into the business, worked without receiving a salary, and reinvested all of their profits into the business. . Conversely, defendants argue that plaintiffs failed to present any evidence that a joint venture existed. According to 1^defendants, even if an oral agreement exists,, all contracts involving immovable property must be in writing.[6]
Summary judgment shall be rendered if the pleadings, depositions, answers to in-' terrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and that the movant is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). A genuine issue of material fact is one as to which reasonable persons could disagree. Argonaut Great Cent. Ins. Co. v. Hammett, 44,308 (La.App.2d Cir.6/3/09), 13 So.3d 1209, writ denied, 2009-1491 (La.10/2/09), 18 So.3d 122.
Summary judgment is seldom appropriate for determinations based on subjective facts of motive, intent, good faith, knowledge or malice. Jones v. Estate of Santiago, 2003-1424 (La.4/14/04), 970 So.2d 1002; Hooker v. Wal-Mart Stores, Inc., 38,350 (La.App.2d Cir.4/7/04), 870 So.2d 1131, writ denied, 2004-1420 (La.9/24/04), 882 So.2d 1142. One reason is that these subjective facts call for credibility evaluations and the weighing of testimony. Hooker, supra; Oaks v. Dupuy, 32,070 (La.App.2d Cir.8/18/99), 740 So.2d 263, writ not considered, 99-2729 (La.11/24/99), 750 So.2d 993. Furthermore, the circumstantial evidence usually necessary for proof of motive or intent requires the trier of fact to choose from competing inferences, a task not appropriate for a summary judgment ruling. Hooker, supra.
11SAppellate courts review summary judgments de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Argonaut Great Cent. Ins. Co., *480 supra. Summary judgments are favored under Louisiana law; however, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and doubt must be resolved in the opponent’s favor. LSA-C.C.P. art. 966(A)(2). Argonaut Great Cent. Ins. Co., supra.
As stated above, in the instant case, the district court granted summary judgment in favor of defendants and denied plaintiffs’ motion for partial summary judgment. Although the court did not provide reasons for its ruling on the cross motions, while ruling on the exception of prescription, the court stated, “The evidence does not show that there was a meeting of the minds resulting in the formation of an oral joint venture or partnership, entitling Plaintiffs to a one-third interest in even the first two Monroe stores, not to mention the other 16 or so stores.”
Unlike a corporation, parties do not have to-file any documents with the Secretary of State in order to create as between themselves a joint venture. Since the essential elements of a joint venture and a partnership are the same, joint ventures are generally governed by partnership law. Tedeton v. Tedeton, 46,901 (La.2/8/12), 87 So.3d 914, 924; Riddle v. Simmons, 40,000 (La.App.2d Cir.2/16/06), 922 So.2d 1267, writ denied, 2006-0793 (La.6/2/06), 929 So.2d 1259. No formal or specific agreement is required. Generally, the relationship may be formed by an oral agreement and the Inexistence of a joint venture may be inferred from the conduct of the parties and other circumstances. Id.
The partnership is created by a contract between two or more persons to combine their efforts or resources in determined proportions. LSA-C.C. art. 2801. There are no hard and fast rules in determining whethér a partnership exists and each case must be considered, based on its own facts and circumstances. Tedeton, supra; Harris v. Wallette, 538 So.2d 728 (La.App. 2d Cir.1989). Louisiana partnership law provides that each partner participates equally in profits, commercial benefits and losses of the partnership, unless the partners have agreed otherwise. LSA-C.C. art. 2803.
During her deposition, plaintiff, Kailash, was questioned at length with regard to the existence of a joint venture. She stated that she, Manmohan and Karl decided to form the joint venture, in which the three' of them would each own a one-third interest. She described it as a “family business” in which she and Manmohan supplied capital and labor, while Karl worked weekdays and managed the day-to-day operation of the stores. Kailash also testified that she and Manmohan trusted Karl; once they saw that Karl was successful in managing the stores, they invested more and more into the stores, in the' form of income and physical labor on weekends, holiday breaks and summers. She stated that she and Manmohan invested a portion of their salaries from teaching and did not receive any of the profits from the stores “[j]ust to have more and more— another store. So, the money was going there. So, [Karl] was using the money to do the best possible thing.” However, during some portions of her deposition |, testimony, Kailash seemed to indicate that she and Manmohan owned an interest in only the first two stores Karl opened in Monroe.
Contrarily, during the taking of his deposition, Karl denied ever entering into a joint venture with his parents. Similarly, Sookham denied having any knowledge of the formation or the existence of a joint venture. Kanwal Singh, one of Karl’s partners in some of his convenience stores, *481 testified that he did not have any knowledge of a joint venture between Karl and his parents. Karl also submitted the affidavits of several other witnesses who attested that they did not have any knowledge of the existence of a joint venture between Karl and his parents.
Based on our review of the summary judgment evidence presented to the district court, we find that this matter involves factual issues which center on whether a joint venture existed between Karl, Kailash and Manmohan. Pretermit-ting the issue of whether the district court correctly ruled on the cross motions for summary judgment by way of the motion for new trial, we find that summary judgment was inappropriate, as genuine issues of material fact exist with regard to the existence of a joint venture.[7] As noted above, Kailash testified that she, Manmo-han and Karl formed a joint venture in the late 1970s or early 1980s. Kailash provided undisputed deposition testimony that she and Manmohan provided Karl with large amounts of capital over the years and, prior to their retirement from teaching, they worked in their first two stores on weekends, during holidays [ 18and during summer breaks. Kailash also testified that she and Manmohan elected to reinvest their share of the profits back into the stores. Conversely, Karl denied ever entering into an agreement with his parents to form a joint venture. Karl also submitted affidavits within which the affiants denied having any knowledge of the existence of a joint venture.
A resolution of the issue of whether a joint venture existed between these parties requires the district court to weigh the conflicting factual evidence and to make credibility determinations. The fact that the evidence presented is subject to conflicting interpretations requires us to conclude that summary judgment in favor of defendants was improperly granted. Accordingly, we shall reverse the district court’s ruling.
Plaintiffs further contend the district court erred in sustaining defendants’ exception of prescription/peremption. Plaintiffs argue that the court incorrectly calculated the date on which prescription/peremption commenced. According to plaintiffs, Manmohan died June 21, 2010; two days later, Kailash asked Karl for a return on her investment into the stores. Karl refused and represented to Kailash, for the first time, that he and Sookham (or corporate entities owned by them) owned 100% interest in all of the stores. Plaintiffs filed suit on February 9, 2011.
LSA-R.S. 12:1502, which applies to all business organizations, provides, in pertinent part:
A. The provisions of this Section shall apply to all business organizations formed under the laws of this state and shall be applicable to actions against any officer, director, shareholder, member, manager, general partner, limited partner, managing partner, or other person similarly situated.
|1flB. The term “business organization” includes any entity formed under the laws,of this state engaged,in any trade, occupation, profession, or other commercial activity including but not limited to professions licensed by a state or other governmental agency. . This Section shall apply without limitation to corporations, incorporated or unincorporated as *482 sociations, partnerships, limited liability partnerships, partnerships in eommen-dam, limited liability companies, or cooperative associations or other entities formed under the laws of this state.
C. No action for damages against any person described in Subsection A of this Section for an unlawful distribution, return of an unlawful distribution, or for breach of fiduciary duty, including without limitation an action for gross negligence, but excluding any action covered by the provisions of Subsection D of this Section, shall be brought unless it is filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered, but in no event shall an action covered by the provisions of this Subsection be brought more than three years from the date of the alleged act, omission, or neglect.
D. No action for damages against any person listed in Subsection A of this Section for intentional tortious misconduct, or for an intentional breach of a duty of loyalty, or for an intentional unlawful distribution, or for acts or omissions in bad faith, or involving fraud, or a knowing and intentional violation of law, shall be brought unless it is filed in a court of competent jurisdiction and proper venue within two years from the date of the alleged act or omission, or within two years from the date the alleged act or omission is discovered or should have been discovered, but in no event shall an action covered by the provisions of this Subsection be brought more than three years from the date of the alleged act or omission.
E. The time limitations provided in this Section shall not be subject to suspension on any grounds or interruption except by timely suit filed in a court of competent jurisdiction and proper venue.
[[Image here]]
| ^Prescription commences when a plaintiff, who claims involvement in a business organization, gains actual or constructive knowledge of the wrongful act. See, LSA-R.S. 12:1502(D); Brown v. Schreiner, 2010-1436 (La.App. 4th Cir.11/9/11), 81 So.3d 705. Constructive notice exists when a party has information sufficient to motivate curiosity and attention or place a reasonable person on guard to call for inquiry. Scranton v. Ashley Ann Energy, L.L.C., 46,984 (La.App.2d Cir.4/11/12), 91 So.3d 1174, writ denied, 2012-1345 (La.9/28/12), 98 So.3d 846.
Ordinarily, the party who asserts the peremptory exception of prescription bears the burden of proof at the trial of the exception. Carter v. Haygood, 2004-0646 (La.1/19/05), 892 So.2d 1261; Scranton, supra. However, when prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to prove that the action has not prescribed. Denoux v. Vessel Management Servs., Inc., 2007-2143 (La.5/21/08), 983 So.2d 84; Carter, supra; Scranton, supra.
Here, plaintiffs alleged that Kai-lash and Manmohan stopped working in the stores in 1999, due to their advanced age; however, they continued to invest capital in the stores. Pursuant to a power of attorney, Karl was authorized to conduct business on their behalf. Plaintiffs also alleged that they relied on Karl’s representation that he was acting in the best interest of the venture. More specifically, plaintiffs alleged, inter alia:
[[Image here]]
35.
*483 In early 2010, KARL refused the request of the decedent for a distribution of partnership funds in the amount of $5,000 to fund an educational trust in his native village |2iin India, which refusal of partnership funds perplexed and confused both Plaintiff and decedent.
36.
The cause of the instant lawsuit crystal-ized on June 24, 2010, three days after decedent passed away-when Karl claimed all partnership properties, assets and entities belonged to Karl and/or his wife, SOOKHAM.
[[Image here]]
As stated above, this lawsuit was filed on February 9, 2011. Thus, prescription is not evident on the face of the pleadings of record. Therefore, it is incumbent upon defendants to show that the action is prescribed.
Defendants argue that Kailash and Man-mohan allegedly entered into the joint venture to make economic profit to be used in their retirement from teaching. They retired in 1993. Although they knew the stores were profitable, Kailash and Man-mohan never sought to share in the profits from the stores. According to defendants, prescription commenced, at the very least, in 1993, when Kailash and Manmohan retired from teaching and failed to seek a share of the profits derived from the alleged joint venture.
The district court agreed, stating, “[T]he delay for suing to claim the two-thirds share of profits Plaintiffs allege they are due has long-since passed. No distribution of profits has ever happened. And Plaintiffs knew the stores were profitable.”
We also shall reverse the district court’s ruling on the issue of prescription. According to the allegations set forth in the petition, Kailash and Manmohan invested large amounts of capital and a great deal of labor into at least two of the convenience stores. Plaintiffs also alleged that 122Kailash and Manmohan did not seek any share of the profits or salary, electing to reinvest their shares back into the stores. If plaintiffs are correct, an accounting for the profits and assets of the joint venture would now be owed. Plaintiffs did not gain actual or constructive knowledge that defendants had no intention of ever sharing any of the profits with them until June 2010, when Karl informed Kailash that he and Sookham owned 100% interest in the business. This lawsuit was filed eight months later. Accordingly, we find that the lawsuit has not prescribed, and the district court’s ruling is hereby reversed.
CONCLUSION
For the reasons set forth herein, we reverse both the district court’s grant of summary judgment in favor of defendants and the district court’s finding that this case is prescribed. We remand this matter to the district court for further proceedings. Costs of this appeal are assessed to defendants, Karminderdal S. Dhaliwal and Dhillon Sookham.
REVERSED; REMANDED FOR FURTHER PROCEEDINGS.

. At some point, Manmohan and Kailash built another store in Monroe. Karl and Sookham were guarantors of the loan; they also loaned Manmohan and Kailash $80,000 to operate the store.

. On July 3, 2012, Mahinderpal Singh "Paul” Dhaliwal, plaintiffs’ son, filed a petition of intervention, "join[ing] with Plaintiff in demanding his portion of the same relief against the defendants[.]” The district court denied the request to intervene on July 6, 2012. That ruling is not at issue in this appeal.

. According to plaintiffs, discovery proved to be problematic because various items “went missing.” The "missing" items included the power of attorney, Karl’s Chase Bank account statements and other crucial financial records.

.On June 6, 2012, defendants filed an exception of insufficiency of service of process and motion to upset the hearing on the motion for summary judgment. Defendants alleged that they were not properly served with plaintiffs’ motion. According to defense counsel, he did not learn about the order fixing the hearing until June 6, 2012. In the alternative, defendants requested additional time to file a response to the motion. The court granted the request and allowed defendants additional time to respond to plaintiffs' motion.

. Trial courts are vested with authority to grant new trials under LSA-C.C.P. art. 1972 on peremptory grounds which appear to have no application in this instance. Under LSA-C.C.P. art. 1973, a new trial may be granted in any case if there is good ground therefor. The standard of review of a denial of a motion for new trial on discretionary grounds is that of an abuse of discretion. Little, supra; Drapcho v. Drapcho, 2005-0003 (La.App. 1st Cir.2/10/06), 928 So.2d 559, writ denied, 2006-0580 (La.5/5/06), 927 So.2d 324.

. On August 16, 2013, defendants' counsel filed a letter in this Court. Pursuant to the letter, counsel expanded his argument that joint ventures pertaining to immovable property must be in writing by citing Midnight Drilling, LLC v. Triche, 2012-1043 (La.App. 1st Cir.6/19/13) (unpublished).

. Plaintiffs argue that in response to their motion for a new trial, the district court granted defendants’ request for a judgment on the motions for summary judgment and improperly issued a ruling entitled "Judgment on Defendants’ Request and Ruling on Motions for Summary Judgment.”