WILLIAMS, J.
1 ¶ Plaintiffs and plaintiffs-in-intervention, Robert A. Lee and Sedric E. Banks, appeal the judgments of two trial courts, dismissing their lawsuits against Kailash Dhaliwal, Karminderdal S. Dhaliwal and Dhillon Sookham. They also appeal the judgment which granted a motion to disqualify them as attorneys for Mahinderpal Dhaliwal and Chapter 7 Bankruptcy Trustee, Clifford Conine. For the following reasons, we affirm.
FACTS
These consolidated cases arise from a family dispute that erupted after the patriarch of the family, Manmohan Singh Dhaliwal (“Manmohan”), passed away. On December 28, 2010, Manmohan’s widow, Kailash Dhaliwal (“Kailash”), retained Robert Lee as her attorney and successfully filed a petition to be appointed as ad-ministratrix of Manmohan’s succession. She also retained Sedric Banks to represent her in a claim that she and Manmo-han were equal partners, along with their son, Karminderdal Dhaliwal (“Karl”), in a joint venture which owned multiple convenience stores in Ouachita Parish.
On February 9, 2011, Kailash, represented by both Lee and Banks, filed a lawsuit, individually and in her capacity as administratrix . of Manmohan's estate, against Karl and his wife, Dhillon Sook-ham (“Sookham”). Kailash sought to recover a two-thirds interest in the alleged family joint venture. In response, Karl and Sookham filed a motion for summary judgment and an exception of prescription which the trial court granted.
On appeal, this Court reversed the trial court’s rulings and remanded lathe case to the trial court for further proceedings. Dhaliwal v. Dhaliwal (La.App.2d Cir.9/11/13), 124 So.3d 470, writ denied, 2013-2931 (La.2/21/14), 134 So.3d 1165.
However, while the matter was pending in this Court, Kailash sent a handwritten letter to Banks, dated September 5, 2013. In the letter, she stated:
I no longer wish to pursue the lawsuit filed on my behalf against my son [and] daughter-in-law, Karminderdal Dhaliwal [and] Dhillon Sookham[.] [Y]ou are instructed to contact Mr. Charlie Heck to dismiss the lawsuit on my behalf. I am a letter [sic] to Mr. Bob Lee instructing him to do the same on behalf of my late husbandfs] estate.
Thereafter, Kailash refused to meet with Lee and Banks. On September 11, 2013, the same day the opinion of this Court was rendered, Banks had a letter hand-delivered to Kailash. In that letter, he expressed his confusion regarding Kailash’s instructions to dismiss the lawsuit and advised her that her instructions were contrary to her interests. He also advised her that Charlie Heck, counsel for Karl and Sookham, lacked the authority to dismiss the lawsuit. Banks further stated, “I will not be a party to asking opposing counsel, Mr. Heck, to either take or assist action(s) which I know to be contrary to your personal interest and in violation of legal dutyfies) which you owe as succession representative.”
Additionally, Banks informed Kailash that Lee had not received a letter from her. He also expressed his suspicion that Kailash was a victim of “fraud, undue influence and duress” because Karl and Sookham were her caretakers. He instructed her to contact his office to schedule a time to discuss this Court’s opinion and to explain the inherent conflicts in her I «instructions to dismiss the lawsuit.
*777 That same day, Kailash responded by sending another handwritten letter to Banks. She stated:
I reiterate to you my desire to dismiss the lawsuit against my son and my daughter-in-law. It is unnecessary for me to meet with you. Please file whatever is necessary for this to be dismissed. I no longer require your services.
Meanwhile, at some point, the other son of Kailash-and Manmohan, Mahinderpal Dhaliwal (“Paul”), entered Chapter 7 bankruptcy. Lee and Banks petitioned the U.S. bankruptcy court, seeking to be appointed as counsel for Paul and special attorney for the Chapter 7 Bankruptcy Trustee, Clifford Conine. Following a hearing held on November '21, 2018, the petition was granted. This appointment permitted Lee and Banks to serve as special counsel in the investigation, litigation, recovery and liquidation of any interest Paul, and by extension, the bankruptcy trustee, may have in the Dhaliwal lawsuit.[1]
By January 2014, Lee and Banks still had not withdrawn as counsel for Kailash and the Succession in the Dhaliwal ease. Consequently, Kailash retained the services of another attorney, Margaret Blackwell. On January 16, 2014, Blackwell sent separate letters to Lee and Banks, informing them that she would be representing Kailash in pursuing the Succession’s interest in the Dhaliwal lawsuit. She asked both attorneys to' execute the motion to substitute counsel of record which was attached to the letters.
Lee responded by letter, expressing a desire to meet with Blackwell |4“to discuss legal and professional issues likely to manifest in the [proceedings], including fiduciary duties in respect to the rights of [Man-mohan]’s son and heir, Paul Dhaliwal.” Lee informed Blackwell that Kailash was possibly “confused or under some untoward pressure!.]”
Banks also responded by letter. He informed Blackwell that he had represented Kailash in her individual capacity, rather than in her capacity as administratrix of the Succession, in the Dhaliwal lawsuit. He suggested that a status conference be scheduled to discuss matters, including the substitution of counsel for Kailash, prior to dismissing her claims against Karl and Sookham. He ended by stating, “Bob and I are perfectly willing to withdraw as counsel with proper permission and instructions from the court to protect the client’s interest as provided in Rule 1.14(b).”
On January 31, 2014, Blackwell, on behalf of the Succession, filed an ex parte motion to substitute counsel, alleging that Kailash “believe[d] that it [was] in the best interest of the Succession” to terminate Lee as counsel.. She also stated that Kai-lash did “not wish for substituted counsel to meet” with Lee to discuss the matter. A hearing was held on the motion. Prior to hearing arguments from counsel, the trial judge met with Kailash privately. Thereafter, the trial court granted the motion to substitute counsel, stating:
The Court, having considered the Motion to Substitute Counsel of Record, the arguments of counsel, and after having examined Kailash Dhaliwal, in her capacity as the administratrix of the Succession of Manmohan S. Dhaliwal, in an in camera interview, and after having found that Kailash Dhaliwal has full mental capacity and is not unduly influenced!.]
*778 The court also denied Lee’s motion to prohibit Kailash from dismissing the ^Succession’s claims against Karl and Sookham. Thereafter, Kailash filed a motion to dismiss her claims asserted in the Dhaliwal case, which was granted by the court. To date, the claims filed by Kailash as administratrix of the Succession have not been dismissed.[2]
On May 2, 2014, Banks and Lee filed a “Petition to Intervene and Assert both Direct and Oblique Actions and Alternative Relief for Unjust Enrichment”- in the Dhaliwal lawsuit. They sought to intervene to assert legal demands against their former client, Kailash, both individually and as administratrix of the Succession, “for breach of contract, bad faith performance of contract, conspiracy and legal claims of quantum, merit, intentional tort, conspiracy and legal claims under R.S. 37:218, for’years of legal representation requested by plaintiff and furnished in good faith.” Banks and Lee also asserted claims against Karl and Sookham for conspiracy to breáeh the fiduciary duty owed by Kailash as the succession representative; collusion,- and tortious interference with Kailash’s contract with her attorneys. Further, they asserted claims of unjust enrichment against Kailash, Karl ‘arid' Sookham. ■
In their petition, Lee and Banks also asserted an oblique action against Kailash, as administratrix of the Succession, on behalf of Paul and the bankruptcy trustee, “to enforce claims’against [Karl'and Sook-ham] to recover succession property wrongfully converted by said defendants, including, ’in part, ’ property constituting the debtor’s estate and rightfully | (¡belonging” to Paul and/or the bankruptcy trustee. In that action, they alleged- collusion between Kailash,- Karl and Sookham, “with obvious intention to violate [Kai-lash’s] fiduciary duty (and oath) as admin-istratrix” of the Succession and that they acted with “knowing intention and conspiracy” to violate Kailash’s attorney-client relationship with her attorneys.
In response, Kailash filed exceptions of no cause of action and no right of action. She argued that she had entered into a contingency contract with the attorneys, pursuant to which the attorneys’ recovery of fees was based upon the recovery of damages. Once she exercised her right to dismiss her lawsuit, no damages were recovered. Additionally, she argued that the attorneys no longer had a right to pursue the claims without her consent.
Kailash also filed a motion to dismiss the petition for intervention and ⅛ motion to disqualify Banks and Lee from representing Paul Dhaliwal and the trustee, John Clifton Conine, in the lawsuit. She alleged that Banks and Lee’were prohibited from representing Paul and the ' bankruptcy trustee because they had previously represented her (and the Succession) in the same lawsuit. Karl and Sookham joined Kailash in the motion to dismiss and to disqualify the attorneys.
In response to the motion to disqualify them as attorneys in the cases, Lee and Banks filed exceptions of res judicata, lack of subject matter jurisdiction arid lack of procedural capacity. They argued that the trial court lacked jurisdiction to disqualify them from representing Paul and the ^bankruptcy trustee. They also argued that Kailash, the Succession, and Karl lacked the procedural capacity to object to *779 their appointment by ■ the bankruptcy, court.,
Lee and Banks also opposed the motion to dismiss their petition to intervene. They argued-that as attorneys ■ for Paul and the bankruptcy trustee, they were authorized to assert'an oblique action against Kailash, which was' permissible because they were not seeking-to recover any property owned by her and were not seeking t.o-recover damages from her. They reiterated- their assertions that .Kailash was breaehing her fiduciary duty to the Succession and was increasing her insolvency by dismissing her lawsuit against Karl and Sookham.
Following a hearing,, the trial court granted the motion to disqualify Lee and Banks as attorneys for Paul and the trustee in the Dhaliwal matter. Lee and Banks filed written objections to the court’s ruling.[3] The court also granted the motion to dismiss the petition to intervene, in part, and denied the motion in part stating “Mr. Bañks and Mr. Lee can claim their privilege arising from the contingency fee contract on any funds ultimately awarded to Plaintiff.” In its reasons for judgment, the court stated:
[T]he Court granted Plaintiffs and Defendants’ Motion to Disqualify, disqualifying Mr. Banks and 'Mr. Lee from representing Paul Dhaliwal or Clifford Conine in any claims against Dr. [Kai-lash] Dhaliwal; individually or in her capacity as the Administratrix of the Succession of Manmohan Dhaliwal." Mr. Banks and Mr. Lee |spreviously represented Dr. Dhaliwal in the case at issue. A very real possibility exists that their continued representation of Paul Dhaliwal or Clifford Conine would require them to cross-examine their former client. Paul Dhaliwal and Clifford Conine’s claims were against Dr. Dhali-wal, by the very wording in the Petition to Intervene, and the Rules of Professional Conduct are very clear in that a lawyer may not represent a client and then successively represent an interest adverse to that party on the same issues, let alone in the same suit.
* ⅝ ⅜
Mr. Banks and Mr. Lee have introduced into the record a Contingency Fee Contract of Employment, which appears to have been signed by Dr. Dhaliwal on February 8, 2011. Based upon that contract, they allege breach of contract, bad faith performance of contract, quant[um] mer[it], intentional tort;' conspiracy and legal claims under R.S. 37:218.
Mr. Banks and Mr. Lee have a potential ■cause of action for fees against Dr, Dhal-iwal;" however, their interest in this suit is no more than a privilege on any funds ultimately awarded to Plaintiff. To allow additional claims such as breach of .contract, bad faith performance of- contract,-quantfum] merit, intentional tort, or conspiracy would be to extend this lawsuit'into something it is not.
[[Image here]]
The trial court did not address the declina-tory and dilatory exceptions filed by Lee and Banks, noting that the law does not allow parties to file ah “exception to an exception.”
Subsequently, on September 3, 2014, Lee and Banks filed a separate lawsuit *780 against Kailash, Karl and Sookham. That lawsuit, captioned “Petition for Direct Action, Oblique Action and Revocatory Action,” was assigned to a different division and, consequently, was heard by a different judge. In the direct action, the attorneys alleged, inter alia: Kailash intentionally violated the contingency fee contract without cause with the intent to harm the attorneys; Kailash failed to perform the contract in good |flfaith; Kailash intentionally violated her oath as administratrix of the Succession; Kailash intentionally breached her fiduciary duties owed to the Succession; Kailash, Karl and Sookham conspired with one another to defraud the attorneys of their earned fees; Karl and Sookham wrongfully interfered with the contingency fee contract; and Karl and Sookham exerted undue influence over Kailash, which resulted in her dismissing the lawsuit against them.
In the oblique action, Lee and Banks alleged that Kailash dismissed her individual lawsuit against Karl and Sookham, increasing her insolvency and failing to exercise her right to recover her one-third interest in the joint venture, which is allegedly worth $25 million. They also alleged that the dismissal of the lawsuit resulted in Kailash’s inability to pay and satisfy her attorney fees owed under the contingency contract. Additionally, the attorneys alleged that Kailash, Karl and Sookham conspired to unjustly enrich themselves and increase Kailash’s insolvency at the expense of her former attorneys.
In the revocatory action, Lee and Banks sought to annul the judgment dismissing Kailash’s interest in the Dhaliwal lawsuit. They alleged, in part, that they “have been prevented from fairly recovering contractual attorney fees for proving a family partnership exists[.j”
In response to the second lawsuit, Kai-lash filed a peremptory exception of no cause of action and requested that Lee and Banks be sanctioned for “engaging in behavior which violates the Louisiana Rules of Professionalism” and for engaging in behavior that had “caused great harm Imto their former client.” The trial court denied Kailash’s exception of no cause of action without assigning reasons.
Karl and Sookham filed declinatory and peremptory exceptions of lis pendens, res judicata, prescription, no right of action, no cause of action and vagueness. They also requested that Lee and Banks be sanctioned for “abuse of process and pursuant to LSA-C.C.P. art. 863.”
Following a hearing, the trial court sustained the exceptions of no right of action and no cause of action. In its written reasons for judgment, the court stated:
[[Image here]]
Plaintiffs accused the Exceptors, in con-clusory terms, of conspiring with the Plaintiffs’ former client to deprive the Plaintiffs of compensation that they had earned or deserved because of their service as the Attorneys for the Exceptors’ former adversary.
This Court is not aware of, nor have the Plaintiffs pointed out, in any argument convincing to this Court, any theory of law under which the Exceptors would be responsible to the Plaintiffs for their compensation for litigation which has not resulted in any Judgment against Exceptors. Plaintiffs have failed to convince this Court, under the facts articulated in the Plaintiffs’ Petition, that Ex-ceptors owed any duty whatsoever to the Plaintiffs under any theory of law. Under the facts articulated in the Plaintiffs’ Petition, their former client cannot reasonably be construed as a debtor to the Plaintiffs under the cause of action contemplated in La. Civil Code Article 2036 and related codal articles. Nor can *781 the Plaintiffs show any legal relationship between any ‘enrichment’ the Exceptors may have enjoyed and any ‘impoverishment’ of the Plaintiffs’ claim.
Terms such as ‘conspiring’ and ‘colluding’ have specific legal components sepa--rate and distinct from their usual everyday connotation. To attach such terms to describe the ordinary actions of the Exceptors that were alleged in this lawsuit (i.e., causing a legal action against them to be settled by influencing their legal'adversary), adds Innothing to the basic alleged facts so as to state a cause of action.
Lee and Banks appeal.[4]
DISCUSSION
Appellants, Lee and Banks, contend the trial court erred in disqualifying them as attorneys to represent Paul and the bankruptcy trustee in the Dhaliwal lawsuit. Appellants argue as follows: the U.S. Bankruptcy court granted their application and appointed them to be special counsel to investigate and litigate the bankruptcy trustee’s interests in the Dhal-iwal case; therefore, the trial court’s ruling “constituted an impermissible collateral attack on a previously lawfully rendered judgment in another court of competent jurisdiction”; the order was issued by a competent tribunal, and is not void on its face; and the trial court lacked jurisdiction to disqualify them after the bankruptcy court appointed them because federal courts have exclusive jurisdiction over bankruptcy matters.
A motion to disqualify counsel requires the court to balance several important factors: (1) the right of a party to retain counsel of his choice; and (2) the substantial hardship which might result from disqualification as against the public perception of and the public trust in the judicial system. Keith v. Keith, 48,919 (La.App.2d Cir.5/15/14), 140 So.3d 1202, citing Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F.Supp. 514 (M.D.N.C.1996). The disqualification of counsel must be decided on a case-by-case basis. Id.
Rule 1.9 of the Rules of Professional Conduct sets forth duties owed |12to a former client and provides:
(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
(b) A lawyer shall not knowingly represent a person in the' same' or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client:
(1) whose interests are materially adverse to that person; and
(2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(e) that is material to the matter; unless the former client gives informed consent, confirmed in writing.
(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
(1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
*782 (2) reveal information relating to the representation except as these Rules would permit or require with respect to •a client. ■
In the instant case, it is undisputed that Banks represented Kailash in her individual capacity in the Dhaliwal lawsuit, while Lee represented her in her capacity as administratrix of the Succession of her late husband. It is also undisputed that Lee and Banks, as Special Counsel for Paul and the bankruptcy trustee, filed a petition to intervene in the lawsuit that they had filed on behalf of their former clients (Kai-lash and the Succession). The petition provided, in pertinent part:
_b* * *
14.
AND NOW INTO THESE presents [sic], through undersigned counsel, come Chapter 7 debtor, PAUL DHALIWAL, son of the late MANMOHAN DHALI-WAL and Chapter 7 bankruptcy trustee, CLIFFORD CONINE, who intervene in this lawsuit in order to allege, demand and assert an oblique action against plaintiff, KAILASH DHALIWAL, ad-minístrate of the SUCCESSION of MANMOHAN DHALIWAL, to enforce claims against defendants KARL and SOOKHAM DHALIWAL to recover succession property wrongfully converted by said defendants, including, in part, property constituting the debtors’s estate and rightfully belonging to PAUL DHALIWAL and/or Chapter 7 Bankruptcy trustee CLIFFORD CONINE.
15.
Intervenor, PAUL DHALIWAL, upon particular information and belief, alleges obvious collusion between plaintiff and defendant, with obvious intention to violate plaintiffs fiduciary duty (and oath) as administrate of the intestate succession of his late father; knowing intention and conspiracy on the part of plaintiff and defendants to violate both letter and spirit of plaintiffs attorney-client agreement by which PAUL DHALIWAL would benefit as an hen- in the intestate succession of his late father; and a further conspiracy to violate fiduciary duties owed by plaintiff as administra-trix of said succession in order to intentionally convert and conceal partnership property rightfully belonging to the succession of his late father, PAUL DHAL-IWAL and his Chapter 7 bankruptcy trustee.
* * *
We first note that it is not within the purview of this Court to determine whether the actions of Lee and Banks did, in fact, constitute violations of Rule 1.9 of the Rules of Professional Conduct. Under its inherent judicial power and its original jurisdiction, the Louisiana Supreme |uCourt has exclusive authority to regulate the practice of law in this state. La. Const. Art. V, § 5(B); Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1978); Mire v. City of Lake Charles, 540 So.2d 950 (La.1989).
However, it is clear that the matter in which Lee and Banks formerly represented Kailash and the Succession is “substantially related” to the instant lawsuit. In fact, it is the same lawsuit. Additionally, in the petition to intervene on behalf of Paul and the bankruptcy trustee, Lee and Banks asserted claims which were “materially adverse” to their former client, as they accused Kailash of collusion, conspiracy and breach of fiduciary duty. Our vast search of statutory and jurisprudential law has yielded no circumstances in which a former counsel has been allowed to file a petition to intervene, setting forth allegations against a former client, in the same proceedings in which they initially represented the former client. Accordingly, we *783 find that the trial court did not err in granting the motion to disqualify Lee and Banks from representing Paul and the bankruptcy trustee in these state court proceedings. This assignment lacks merit.
Appellants also contend the trial court erred in dismissing their petition to intervene to assert claims against Kailash, individually, and in her capacity as admin-istratrix of the Succession. They concede that the facts of this case are “extremely rare” and they acknowledge that the matter in which they previously represented Kailash and the Succession has not been settled or tried. Nevertheless, appellants argue that they should be allowed to intervene in the lawsuit because they were discharged in an attempt by Kailash to defraud them of their “rightfully earned fees.”
11fiLSA-C.C.P. art. 1091 provides:
A third person having an' interest therein may intervene in a pending action to enforce a right related to or connected with .the object of the pending action against one or more of the parties thereto by:
(1) Joining with plaintiff in demanding the same or similar - relief against the defendant;
(2) Uniting with defendant in resisting the plaintiff’s demand; or
(3) Opposing both plaintiff and defendant.
An intervenor takes the proceedings as he finds them. Farmer’s Seafood Co. v. State ex rel. Dept. of Public Safety, Office of State Police, 2011-1919 (La.App. 1st Cir.8/8/12), 97 So.3d 1161, 1166, writ denied, 2012-2201 (La.11/21/12), 102 So.3d 62; Leger v. Kent, 2001-2241 (La.App. 4th Cir.4/24/02), 817 So.2d 305. The interve-nor eannot substitute himself for one of the parties and urge matters that enlarge the issues or modify the basic procedural nature of the principal demand by way of intervention. Id. The intervenor cannot change the issues between the parties and cannot raise'a new one. Farmer’s Seafood, supra. The intervenor’s rights are confined to joining or resisting either the plaintiff or the defendant, or to opposing both. The reasons why the-intervenor’s rights are so limited is because he always has his own remedy by a separate action to inject new issues. Id.
In support of their argument, appellants cite O’Rourke v. Cairns, 95-3054 (La.11/25/96), 683 So.2d 697, Saucier, supra, and Reis v. Fenasci & Smith, 93-1785 (La.App. 4th Cir.4/14/95), 635 So.2d 1319. In those cases, former attorneys intervened in the lawsuits to recover áttorney fees after |1fithey had been discharged as counsel prior to the settlement or successful trial of the case.
The contingency fee agreement at’ issue in this case provides, in pertinent part:
⅜ ⅜ ⅜
2. Client agrees to advance-and pay all costs1 of such litigation, including but not limited to cost of court; depositions, investigation, preparation and trial of the case.
IN THE EVENT OF NO RECOVERY, CLIENT SHALL OWE NEITHER ATTORNEY NOTHING FOR SERVICES RENDERED.
3. Out of the sums recovered, Client agrees to first reimburse Attorney for any actual out-of-pocket costs and expenses advanced and paid by Attorney in furtherance of such litigation, if any, then pay Attorney for his services a sum equal to 40% of any and all sums recovered, regardless of whether such recovery and/or settlement comes before, during or after trial.
[[Image here]]
*784 Client and Attorney further agree that the above stated attorney fees, namely 40% will be due and owing on any and all sums and/or properties, both real and personal, recovered for Client. Notwithstanding the above stated 40%, the parties further agree and stipulate that should the litigation be appealed by either or any party(ies), then this contract will extend to include the services of Attorney in the prosecution and/or defense of such appeal with the further understanding and stipulation that the amount owed as to any recovery will be 45% of any and all amounts recovered, after a successful.
4. Client authorizes Attorney to deduct his fee and said costs from the proceeds recovered,
* * *
The contract repeatedly refers to the percentage owed to the attorneys from proceeds and/or sums “recovered.” However, the underlying Dhaliwal |17lawsuit has not been settled or tried on the merits; therefore, no proceeds or sums have been “recovered.” The claims asserted by Kai-lash, in her individual capacity, have been dismissed at her request. The claims asserted by her in her capacity as adminis-tratrix of the succession of her late husband, are still pending in the trial court.
Additionally, appellants did not merely file a petition to intervene in the Dhaliwal lawsuit to recover fees owed to them under the contingency contract. Rather, the petition to intervene essentially expanded the Dhaliwal lawsuit (a petition for a judgment declaring Kailash, Manmohan and Karl equal partnei’s in a joint venture) to add claims, including fraud, conversion, conspiracy, breach of contract and breach of fiduciary duties. Such is impermissible under our Code of Civil Procedure. Therefore, we find that the trial court did not err in dismissing the petition to intervene filed by Lee and Banks. This assignment lacks merit.
Appellants further contend the trial court erred in granting the exceptions of no cause of action and no right of action and dismissing their claims against Karl and Sookham, They argue (1) the allegations set forth in their revocatory action stated a valid cause of action against Karl and Sookham because they have a right to annul Kailash’s dismissal of her personal claim “to the extent such dismissal caused or increased [Kailashj’s insolvency”; (2) Karl and Sookham are indispensable parties to their oblique action against Kailash because they were “third parties against whom” Kailash’s rights were asserted in the Dhaliwal lawsuit; (3) their petition stated a valid cause of action against Karl and Sookham “for duress |1sand/or coercion”; and (4) Karl and Sookham tortiously interfered with their contract with Kai-lash. Further, appellants argue that the trial court erred in failing to allow them to amend their petition.
The function of the peremptory exception is to have the ■ plaintiff’s action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action. LSA-C.C.P. art. 928. LSA-C.C.P. art. 934 provides:
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with an order to amend, the action, claim, demand, issue, or theory shall be dismissed.
*785 The decision to allow the amendment of a pleading to cure the grounds for a peremptory exception is within the discretion of the trial court. Hardy v. Easterling, 47,950 (La.App.2d Cir.4/10/13), 113 So.3d 1178; Downs v. Hammett Props., Inc., 39,568 (La.App.2d Cir.4/6/05), 899 So.2d 792. Further, Article 934 does not require a court to grant a party leave to amend a petition if doing so would be futile because it is apparent that the defect could not be corrected by amendment. Hardy, supra; Magill v. Lowery, 43,261 (La.App.2d Cir.5/7/08), 990 So.2d 18, writ denied, 2008-1237 (La.10/10/08), 993 So.2d 1283.
In reviewing a trial court’s ruling sustaining an exception of no cause of action, the appellate court should conduct a de novo review because the exception raises a question of law, and the trial court’s decision should be |1flbased only on the sufficiency of the petition. Short v. Short, 40,136 (La.App.2d Cir.9/23/05), 912 So.2d 82, writ denied, 2005-2320 (La.3/10/06), 925 So.2d 519; Adams v. Adams, 39,424 (La.App.2d Cir.4/6/05), 899 So.2d 726. The question is whether, in the light most favorable to the plaintiff, the petition states any valid cause of action for relief. City of New Orleans v. Board of Directors of La. State Museum, 98-1170 (La.3/2/99), 739 So.2d 748.
Generally, an action can only be brought by a person having a real and actual interest. LSA-C.C.P. art. 681; Industrial Companies Inc. v. Durbin, 2002-0665 (La.1/28/03), 837 So.2d 1207; Chisley v. Smith, 43,312 (La.App.2d Cir.6/4/08), 986 So.2d 222. The purpose of the peremptory exception of no right of action is to determine whether a plaintiff has a real and actual interest in an action or belongs to a particular class to which the law grants a remedy for a particular harm alleged. Richland Parish Police Jury v. Debnam, 42,421 (La.App.2d Cir.10/17/07), 968 So.2d 294, writ denied, 2008-0016 (La.3/24/08), 977 So.2d 953; Chisley, supra. The exception of no right of action is directed to showing that a plaintiff has no legal right or interest in enforcing the matter asserted, based upon the facts and evidence submitted. LSA-C.C.P. art. 927; Richland Parish Police Jury, supra.
In the separate lawsuit filed against Kai-lash, Karl and Sookham, Lee and Banks made the following allegations:
⅜ ⅜ ⅜
3.
[K]ailash, Karl and Sookham conspired to commit | unintentional wrongful symbiotic acts to unjustly benefit Karl and Sookham and harm plaintiffs, including:
A. Kailash’s intentional violation of her attorney-client agreement, without cause and with intent to harm plaintiff attorneys; and
B. Kailash’s failure to perform attorney-client agreement in good faith; and
C. Kalaish’s misrepresentations, silence, inaction (mentioned in La. Civil Code article 1953) and failure to prosecute claims which she swears are true ... in order to harm plaintiffs and conceal property interests rightfully belonging to the intestate succession of Manmohan Dhaliwal and heir Paul Dhaliwal and Paul Dhaliwal’s Chapter 7 bankruptcy trustee, Cliff Conine; and
D. Kailash’s intentional violation of her oath as administratrix when she issued orders to dismiss her pending claims to the partnership owning and operating nineteen convenience stores in Ouachita Parish, without cause, let alone, reason; and
*786 E. Kailash’s known and intended violation of-specific fiduciary duties required by La. C.C.P. Articles 3191 A and 3211 in order to intentionally harm plaintiff attorneys, as well as Paul Dhaliwal and Chapter 7 bankruptcy trustee, Cliff Conine; obtain unjust advantages;: and cause-loss or inconvenience as mentioned in La. Civil Code Article 1953.
4.
More particularly, plaintiffs alleged Ka-laish Dhaliwal conspired with Karl Dhaliwal and Sookham Dhaliwal to intentionally harm plaintiffs by intentionally violating Kailash’s attorney-client contract in order to wrongfully convert and conceal property rightfully belonging to Paul Dhaliwal and Chapter 7 bankruptcy trustee, Cliff Conine, on which property plaintiffs’ [attorneys] have a statutory- lien under R.S. 9:5001.
$ * ⅝
Ja7-
In the alternative, under the facts and circumstances pled, plaintiff attorneys are legally, fairly and justly entitled to recover all sums due for unjust enrichment of either, any or all named defendants.
8.
Causes of action asserted against Kai-lash and/or Karl and Sookham in the instant direct action include:
* ⅜ *
C. intentional tort and conspiracy on - the part of Kailash Dhaliwal, Karl Dhaliwal and Sookham Dhaliwal to intentionally harm- plaintiff attorneys in order-to-wrongfully convert and conceal succession property rightfully belonging to Paul Dhali-wal and Chapter 7 bankruptcy trustee, Cliff Conine; and -
* * *
E. Unjust.enrichment of Kailash, Karl and Sookham Dhaliwal.
* * *
A portion of the basis of the lawsuit against Karl and Sookham is conspiracy. Essentially, Lee and Banks alleged that Karl and Sookham conspired with Kailash to convert and . conceal property belonging to Paul and the Succession; in doing so, Karl and Sookham were unjustly enriched. They also alleged that Karl and Sookham conspired with Kailash to prevent her former attorneys from receiving the attorney fees that they had earned.
In Louisiana, conversion is an intentional tort and consists of an act in derogation of the plaintiff’s possessory rights. See Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756 (La.1985); Melerine v. O’Connor, 2013-1073 (La.App. 1st Cir.2/26/14), 135 So.3d 1198. To constitute a conversion, an intentional dispossession and/or exercise of dominion or |22control over the property of another in denial of or inconsistent with the' owner’s rights' must be established. Melerine, supra, citing Kinchen v. Louie Dabdoub Sell Cars, Inc., 2005-218 (La.App. 5th Cir.10/6/05), 912 So.2d 715. The Civil Code itself does not identify causes of action for “conversion,” However, causes of action for conversion have been inferred from the Codal articles providing that the right of ownership, possession, arid enjoyment of movables is protected by actions for the recovery of the movables themselves, actions for restitution of their value, and actions , for damages. Dual Drilling Co. v. Mills Equip. Inv., Inc., 98-0343 (La.12/1/98), 721 So.2d 853, citing LSA-C.C. arts. 511, 515; 521, 524, 526, and 2315.
*787 LSA-C.C. art. 2324 provides that he or she who conspires with another person to commit an intentional or willful act is answerable, in solido, with that.person, for the damages caused by such act. An independent cause of action for civil conspiracy does not .exist in Louisiana. Rather, the actionable element of Article 2324 is -the intentional tort that the conspirators agreed to commit and, did, in fact, commit, in whole or. in part, causing the plaintiffs injury. Hardy, supra; Able Sec. and Patrol, LLC v. State, 569 F.Supp.2d 617 (E.D.La.2008).
It is apparent that Lee and Banks are seeking to assert claims against Karl and Sookham that, if true, can only be- brought by Paul, the Succession and the bankruptcy trustee. Lee .and Banks specifically alleged that- Kailash, Karl and Sookham acted to “intentionally harm plaintiff attorneys in order to wrongfully convert and conceal succession property rightfully | ^belonging to Paul Dhaliwal and Chapter 7 bankruptcy trustee, Cliff Conine.” (Emphasis added). If those allegations are true, the right to bring the action is the right of those parties, not Lee and Banks. After reviewing this record in its entirety, as well as all the related codal articles and jurisprudence, we find that the trial court did not err in sustaining Karl and Sookham’s exception of no right of action.
Appellants also alleged that Karl and Sookham conspired with Kailash “to intentionally harm plaintiffs by intentionally violating Kailash’s attorney-client contract[J” The specific acts that Karl and Sookham allegedly committed are not clear from a reading of the petition. However, it appears that appellants are alleging that Karl and Sookham tortiously interfered with the contingency contract between Kailash and her former attorneys.
Appellants assert that the allegations of intentional interference set forth a cause of action under 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228 (La.1989). They argue that Spwmey applies because Kailash, Manmohan and Karl were partners in the family joint venture.
In Spurney, the Supreme Court declined to adopt the broad common law doctrine of tortious interference with contracts. Rather, the court recognized a limited and narrowly defined cause of action for the breach. of duty .by a corporate officer to.refrain from intentionally and, unjustifiably interfering with a contractual relationship between the officer’s corporate employer and the particular plaintiff. Spwmey recognized that the action against a corporate officer for intentional and unjustified interference with ^contractual relations had separate elements: (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer’s knowledge of the contract; (3) the officer’s intentional inducing or causing the corporation to breach the contract or his intentional rendering of performance under the contract impossible or moré burdensome; (4) absence of justification on the part of the officer; and (5) causing damage to the plaintiff by the breach of contract or by rendering the performance of the contract impossible or difficult.
We first note that, contrary to the assertions made by Lee,and Banks, there has never been a determination that a joint venture existed between Kailash, Manmo-han and Karl. This Court reversed the trial court’s judgment granting .summary judgment in favor of Karl and Sookham and remanded the matter to the trial court to make, a determination of whether a joint venture existed.
Additionally, even if a joint venture does exist, there was no contract between the *788 partnérship/joint venture and these attorneys. The attorneys’ contingency fee contract was entered into by Kailash, individually, and in her capacity as administratrix of Manmohan’s succession. She did not enter into the contract on behalf of any partnership or joint venture. Karl and Sookham were not parties to the contract and owed no legal duty to Lee and Banks.
Additionally, appellants contend the trial court erred in sustaining the exception of no cause of action because Karl and Sookham are indispensable parties to the revocatory and oblique actions against Kailash. | asThey argue that they have the right to seek a judgment annulling Kai-lash’s dismissal of her personal claims because the dismissal rendered Kailash insolvent, thereby rendering her unable to pay them for the services they provided. According to appellants, Kailash’s act of dismissing her claims was designed to place her property beyond the reach of them, as her “creditors,” in an attempt to defraud them. They also assert that Karl knew that they were “creditors,” yet he accepted Kailash’s “property” with knowledge that her attorneys were being defrauded. Further, appellants claim, in brief, that Karl and Sookham placed Kailash under duress and/or coerced her into dismissing her claims in the Dhaliwal lawsuit.
We find that the petition failed to state a cause of action against Karl and Sookham for the revocatory and oblique claims made by Lee and Banks. The only assertions in the petition were that Karl and Sookham “knew” about the contract between Kai-lash and her attorneys and that they “knew” about her desire to dismiss her claims. Other than sheer speculation of duress and coercion, Lee and Banks did not plead any specific facts with regard to what actions Karl and Sookham may have taken to “coerce” Kailash into dismissing her claims.
Furthermore, we find that there is nothing in this record to support the argument that Lee and Banks are Kailash’s “creditors.” Lee and Banks entered into a contingency contract with Kailash, which provided that the attorneys would not be entitled to any fees if no recovery was made. The contract did not state what fees, if any, the attorneys would be entitled to if Kailash decided to dismiss the action. Our law does not provide a vehicle |2fiby which an attorney can force his or her client to pursue a lawsuit that the client no longer desires to pursue. Accordingly, we find that the trial court did not err in sustaining the exception of no cause of action and dismissing the claims against Karl and Sookham. Further, we find no allegations exist that would give plaintiffs a cause of action against these defendants under the facts of this case. The trial court did not abuse its discretion in not allowing an amendment of the pleading.
The trial court denied the exceptions filed by Kailash. Therefore, we remand this matter to the trial court for further proceedings with regard to appellants’ claims against Kailash.
CONCLUSION
For the foregoing reasons, we affirm the judgments of the trial courts. Costs of this appeal are assessed to appellants, Robert A. Lee and Sedric E. Banks.
AFFIRMED; REMANDED.
BROWN, C. J,, dissents with written reasons.

. The order also permitted Lee and Banks to recover 40% of the gross recovery as attorney fees, all reasonable costs and expenses, and one-half of any net proceeds after paying attorney fees and expenses.

. Kailash died on April 16, 2015, and the trial court replaced her as the administratrix of the succession. Simran Dhaliwal Emaus has been appointed as administratrix. To date, Emaus has not taken any action with regard to the Succession’s claims against-Karl and Sookham.- -

. ■ In November 2014, the bankruptcy trustee . petitioned the bankruptcy court;to have another attorney appointed as special counsel. The trustee alleged that Banks, and Lee had been placed “in the untenablé position of suing their former client and, as a result, the state court' has not allowed [Lee arid Banks] to proceed^]” According to counsels' assertions in the briefs filed in this Court, Lee and Banks no longer represent the bankruptcy trustee in the proceedings in bankruptcy court.

. On appeal, this Court granted a motion to consolidate the appeal of the dismissal of the lawsuit against Karl and Sookham with the two previously consolidated appeals.