Judgment rendered November 19, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,520-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

BRANDON M. ROWE                                    Plaintiff-Appellee

versus

4-ACES PROPERTY                                    Defendant-Appellant
MANAGEMENT LLC

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 164,781

Honorable Allen Parker Self, Jr., Judge

* * * * *

KENNETH J. BECK                          Counsel for Defendant-
                                         Appellant, 4-Aces Property
                                         Management, LLC

DAVID L. WHITE                           Counsel for Plaintiff-
                                         Appellee, Brandon M. Rowe

CHARLES ROWE                             Counsel for Plaintiff-
                                         Appellee, Brandon M. Rowe
                                         and In Proper Person,
                                         Intervenor-Appellee

SHIRLEY ROWE                             In Proper Person,
                                         Intervenor-Appellee

DOROTHY WATSON-COLLINS                   In Proper Person,
                                         Third Party-Appellee

* * * * *

Before STONE, STEPHENS, and HUNTER, JJ.

**STEPHENS, J.,**

This civil matter arises from the 26th Judicial District, Parish of Bossier, the Honorable Parker Self, Judge, presiding. The plaintiff, Brandon M. Rowe ("Brandon"), filed a petition against the defendant, 4-Aces Property Management, LLC ("4-Aces PM"), seeking rescission of the sale of immovable property located in Jones Cypress Subdivision in Bossier Parish for lesion beyond moiety, lack of authentic form, and fraud. The trial court found in favor of Brandon, rescinded the purported sale as a relative nullity, and awarded damages and attorney fees. For the following reasons, we affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

On May 6, 2021, Brandon filed a petition to rescind the sale of immovable property for lesion beyond moiety, lack of authentic form, fraud, and for injunctive relief. In the petition, Brandon alleged that in February 2021, he was arrested by Bossier City Police. Brandon then contacted Anthony Bowers, who he knew was a bondsman, to assist in his release. In order to secure money for the bond, Brandon decided to use Lots 41 and 42 of Jones Cypress Subdivision ("the lakefront property") as collateral, and he asked if he could pay Bowers back over a 60- to 90-day period after Brandon secured a loan from the bank. Brandon further alleged that Bowers agreed to this arrangement but that there was no agreement between the parties relating to a **transfer of ownership** of the lakefront property.

Brandon further alleged that on March 15, 2021, Bowers presented him with documents in printed form reflecting their agreement that the lakefront property would serve as collateral to secure Brandon's repayment of the bond. The petition further averred that the documents contained no

language that payment of the bond would begin over the next 60 to 90 days. Instead, this information was handwritten on the document. Finding the handwritten portion to be satisfactory, Brandon signed the documents. Bowers, an agent of 4-Aces, bonded Brandon out of jail later that evening. The petition alleged that the bond paper showed 4-Aces Bail Bonds, LLC ("4-Aces Bail Bonds") as the bonding company and Financial Casualty and Surety as the insurance company standing behind the bond.[1] The petition also asserted that Brandon never received a copy of the documents he signed.

According to the petition, several days after Brandon's release, he went to the courthouse and discovered that a cash sale deed had been filed, showing that Brandon had sold the lakefront property to 4-Aces PM for $36,000. Brandon alleged in his petition that it was neither his intention to sell anything nor did he receive money from 4-Aces PM. The petition also stated that the signature on page two of the purported cash sale deed was not where had Brandon signed the document and was not the same document he had signed. Brandon further alleged that there were no witnesses present at

---

[1] The following exchange occurred during the testimony related to the $36,000 bond:

> Q: Now the $36,000 that Brandon has acknowledged is-is owed, is owed to who?
> Bowers: To me. To 4 Aces Prop—I mean, yeah, 4 Aces Property Management, I used funds from there to pay 4 Aces Bail Bonds to post the bond.
> Q: So that'—
> A: And all of – both of them are mines.
> Q: So, the money is actually owed to 4 Aces Property Management Company, your company; is that correct?
> A: Yes.
> Q: And – and that's because you, uh, pay the, the uh, the fidelity company and is a portion of your fees; is that correct?
> A: That is correct.

the signing of the document on March 15. The only people present at the signing, according to the petition, were Brandon, Bowers, and the notary public, Dorothy Watson-Collins. Similarly, no handwritten statement was part of the cash sale deed document.

On November 24, 2021, 4-Aces PM filed a third-party demand, alleging that Dorothy Watson-Collins, the notary public, be made a third-party defendant in the matter. On that same date, 4-Aces PM filed a motion to recuse counsel of record and alleged that Charles R. Rowe was a witness in the matter and was prohibited from representing Brandon under the Louisiana Rules of Professional Conduct. On June 13, 2022, Charles R. Rowe and Shirely C. Rowe filed a petition for intervention. In it, the pair alleged: they purchased the lakefront property on June 25, 1998, and donated one-half interest in the property to Brandon on June 20, 2000; Charles and Shirely then donated the remaining one-half interest in the lakefront property to Brandon on August 11, 2006; however, the donation did not contain any language of acceptance by Brandon, resulting in Charles and Shirely being the owners of the lakefront property. On December 9, 2022, 4-Aces PM filed an exception of no right of action or no cause of action in response to the petition to intervene. The trial court ultimately granted 4-Aces PM's exception, finding that the donation was accepted by Brandon through possession, and the trial court dismissed the Rowes' petition of intervention.

On December 22, 2022, Brandon filed a motion for summary judgment, alleging that no genuine issues of material fact existed as to lesion beyond moiety, lack of authentic form, fraud, and failure of acceptance. Following the summary judgment hearing held on February 28, 2023, the trial court initially granted Brandon's summary judgment motion on the

3

issue of lesion beyond moiety. However, the trial court filed an amended ruling and reasons for judgment on May 8, 2023, wherein it instructed that 4-Aces PM supplement the original amount paid with the price established by the court with legal interest from the time the demand for rescission was made if 4-Aces PM wished to retain ownership of the lakefront property. Alternatively, it ordered that 4-Aces PM could return the lakefront property to Brandon, and Brandon tender the original price paid for the lakefront property with legal interest from the date of notification of the intent to return the lakefront property.

Following a rehearing on the motion for summary judgment held on August 23, 2023, the trial court opined that it had made an error relating to its determination to a reasonable legal certainty of the value of the lakefront property. Consequently, the trial court on its own motion set aside its previous May 8, 2023, judgment and determined that there were genuine issues of material fact which could not be resolved on a motion for summary judgment. Ultimately, the trial court denied Brandon's motion for summary judgment.

A bench trial began on February 29, 2024. At the beginning of the trial, 4-Aces PM raised concerns about Charles Rowe continuing on as counsel for Brandon. It argued that Charles had a direct interest in the matter as he had intervened, claiming to be the owner of the lakefront property. Furthermore, 4-Aces PM suggested that Charles had direct knowledge as it relates to the evaluation of the property, and Charles was presently collecting money from the property. Given this direct interest in the case, 4-Aces PM urged that Charles should be sequestered and be required to recuse. In response, Brandon argued that the intervention claim

4

had been dismissed, an expert would be testifying as to the value of the lakefront property, and Charles had done 80-90% of the work on the case, resulting in undue hardship on Brandon if Charles were required to recuse. The trial court concluded that there would be no reason for Charles to testify, given the extensive witness list. The court stated that Charles had no ownership interest in the property, and Charles was not involved in the "transaction" that took place between Bowers and Brandon.

Robert Williams, a residential real estate appraiser, was qualified as an expert and the first witness to take the stand at trial. Williams testified that he viewed the property in person. It was a lakefront property with a mobile home on it and was valued at $175,000. He took pictures of the property, and the images were included in his appraisal report.

Next to testify at trial was Dorothy Watson-Collins, the third-party defendant. Ms. Collins testified that she has been a notary public for 24 years. She stated that three years ago, Bowers contacted her to meet him at the jail, and she was under the impression that he was bonding someone out and that the bond had something to do with property. She also testified that Bowers had her bring a second page or execution page. She indicated that once the discussion between Bowers and Brandon began, she realized that it was about deeding property rather than someone being bonded out of jail. Ms. Collins testified that there were no witnesses in the interview room with the three of them. She stated that she handwrote some information on the documents to make the agreement more clear between Bowers and Brandon. Ms. Collins testified that Brandon ultimately signed the documents once the parties came to an agreement that included a 60-day payment option. Ms. Collins stated that she felt she had done everything legally expected of her.

Although Ms. Collins did attempt to record the exchange, she indicated that she was unsuccessful in doing so and never had any video footage of the encounter.

Brandon's girlfriend, Amy Hill, also testified at trial. She indicated that she was arrested in February 2021, and her family contacted Bowers to obtain a bond for her release. She testified that once she was released, she tried to assist in Brandon's release by contacting Bowers. Ms. Hill related to the court that she and Brandon discussed using the lakefront property as collateral to obtain a loan from the bank and to use the property as collateral to get a property bond from a bondsman to assist in Brandon's release. She testified that, despite frequent contact with Bowers leading up to Brandon's release, she was unable to reach Bowers after Brandon was released from prison.

Brandon testified that on March 15, 2021, he was under the impression that he was signing something to put up his lakefront property as collateral with time to pay it back. He indicated that the witnesses listed on the document were not present at the meeting, but he did acknowledge his signature on the documents. Following his release, Brandon testified that he went to the courthouse to obtain the deed for the lakefront property to take with him to the bank to get a loan. When he asked for the deed, Brandon stated that he was surprised to find that Bowers had recorded a deed that indicated that 4-Aces PM owned the lakefront property. Brandon testified that he believed he had committed himself to paying $36,000 to Bowers within 60 days.

Anthony Bowers testified that he prepared the first sheet of the documents involved in the transaction, and Ms. Collins prepared the second

page. He stated that he filed the paperwork at the courthouse to protect himself and to prevent Brandon from selling the property. Bowers indicated that if Brandon paid the money back, Bowers would have allowed Brandon to "redeem" the property. He testified that he routinely deals with similar instances involving property like cars and computers. He testified that individuals sell him the property, and he gives them a certain amount of time within which to recover the property. During his interactions with Brandon, Bowers was not intending to do anything differently from his normal business practices. Despite Ms. Hill and Brandon's claims about no contact from Bowers following Brandon's release, Bowers testified that Brandon never reached out after he was released, and Brandon never returned a $36,000 payment.[2]

As it relates to the lakefront property, Bowers stated that after 60 days had passed, he went to the lakefront property and informed the tenant that he was taking possession of the property. Bowers testified that, following his conversation with the tenant, the lessee paid rent to him on one occasion. Bowers also related that Ms. Collins filmed the exchange at the jail, which is why he contacted her about obtaining the recording. Bowers testified that he saw Ms. Collins filming the exchange, and they checked to be sure the footage was on her phone. Bowers stated that Ms. Collins explained to Brandon that he was deeding the property to Bowers and that he would have

---

[2] In its judgment, the trial court clearly articulated that the defendant, 4-Aces Property Management, did not pay any funds towards Brandon's release. Rather, 4-Aces Bail Bonds was the company affiliated with paying the fees associated with the actual bond. Despite Bowers' testimony that he personally gave the money to 4-Aces PM which in turn gave the money to 4-Aces Bail Bonds to pay the bonding fees, the trial court concluded that limited liability corporations do not work that way. Instead, the trial court found, that the named defendant in the current lawsuit, 4-Aces Property Management, LLC, was not entitled to receive monies which it did not expend.

60 days within which to redeem it. As it relates to the signature of witnesses, Bowers testified that Ms. Collins suggested that he have someone sign as witnesses, and if anyone had questions about the documents, the video would be available to resolve any of those questions.

Following the bench trial, the trial court found in favor of Brandon and against 4-Aces PM, rescinding the cash sale deed signed by the parties on March 15, 2021. In its written reasons for judgment filed on April 8, 2024, the trial court explained that the entity allegedly acquiring the lakefront property from Brandon was 4-Aces PM. However, it explained that a different company, 4-Aces Bail Bonds, paid the fees associated with the actual bond. The trial court ascertained that the evidence showed 4-Aces PM did not pay any funds towards Brandon's release from prison. Consequently, 4-Aces PM was not entitled to receive monies which it did not expend, and the court ordered the Clerk of Court to cancel the "deed." The trial court also found that Brandon was owed $3,000, plus interest, due to 4-Aces PM's fraud, and the court awarded attorney fees in the amount of $10,000. The trial court also dismissed Ms. Collins as a third-party defendant at 4-Aces PM's cost, and 4-Aces PM was assessed with all costs of the proceedings. The trial court's judgment was rendered and signed on April 30, 2024. It is from this judgment that 4-Aces PM has appealed.

**DISCUSSION**

4-Aces PM alleges four assignments of error: (1) the trial court erred in allowing an attorney to represent a client in court when the attorney is a former party in the case, has a personal interest in the outcome of the case, and is a necessary and material witness in the case; (2) the trial court incorrectly ruled that the sale document is unenforceable; (3) the trial court

8

erred in not enforcing the sale document because the deadline to exercise the redemption option had passed; and (4) the trial court incorrectly awarded damages, attorney fees, and costs as there was insufficient evidence presented to justify such awards.

*Assignment of Error No. 1*:

4-Aces PM first urges that an attorney cannot represent a client in court when the attorney is a former party in the case, has a personal interest in the outcome of the case, and is a necessary and material witness in the case. Brandon argues, however, that there were no grounds for his father, Charles Rowe, to be recused from representing him.

A motion to disqualify counsel requires the court to balance several important factors: (1) the right of a party to retain counsel of his choice, and (2) the substantial hardship which might result from disqualification as against the public perception of and the public trust in the judicial system. The disqualification of counsel must be decided on a case-by-case basis. *Dhaliwal v. Dhaliwal*, 49,973 (La. App. 2 Cir. 11/25/15), 184 So. 3d 773, *writ denied*, 16-0236 (La. 4/4/16), 190 So. 3d 1204; *Stevens v. St. Tammany Par. Gov't*, 19-1555 (La. App. 1 Cir. 4/8/21), 322 So. 3d 1268, *writ denied*, 21-00800 (La. 11/3/21), 326 So. 3d 898; *Succession of Armand*, 19-751 (La. App. 3 Cir. 2/27/20), 297 So. 3d 37.

The burden of proving disqualification of an attorney rests on the party making the challenge. *Walker v. State, Dep't of Transp. & Dev.*, 01-2078 (La. 5/14/02), 817 So. 2d 57. The refusal to disqualify an attorney is typically subject to review under the manifest error standard. *Succession of Armand*, *supra*.

9

Rule 3.7 of the Louisiana Rules of Professional Conduct prohibits a lawyer from acting as an advocate in a trial in which the lawyer is likely to be called as a necessary witness except under certain circumstances. Rule 3.7 provides, in pertinent part:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
> (1) The testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.

At the hearing on the motion to disqualify, in support of its contention that Attorney Charles Rowe should have been recused from the matter, 4-Aces PM asserted that Charles had a direct interest in the matter considering Charles and his wife filed an intervention claim. 4-Aces PM also urged that Charles had direct knowledge as it relates to the evaluation of the lakefront property, and 4-Aces PM considered Charles to be a material witness. In response, Charles maintained that he had an expert witness to testify about the evaluation of the lakefront property. Charles also requested that the trial court consider he had performed 80-90% of the work on the case, filing motions and preparing for trial. However, Charles made it clear he did not intend to testify but would if necessary. He also suggested that it would place a substantial hardship on his client if the court saw it fit to disqualify him.

The trial court ultimately determined that although 4-Aces PM would have the right to call Charles as a witness, the court saw no reason to classify Charles as a necessary witness. The court stated that Charles had no ownership in or interest in the lakefront property, as previously established in the dismissal of Charles's intervention petition, and Charles did not

10

participate in the "transactions" that occurred between Brandon and Bowers. Given these reasons, the trial court denied 4-Aces PM's motion to have Charles Rowe disqualified as Brandon's attorney, and the record supports this conclusion.

4-Aces PM failed to prove how and why Charles Rowe would be a necessary witness. 4-Aces PM's contentions that Charles had direct knowledge of the evaluation of the property and had attempted to intervene in the proceedings as a party failed to establish how Charles would be considered a necessary witness. The record clearly reflects that Charles had no interest or ownership in the lakefront property, and he had no participation in the scenario at issue at trial. He simply was the previous owner of the lakefront property before donating the property to Brandon, his son. This is not grounds for disqualification, and the trial court correctly dismissed 4-Aces PM's motion to have Charles recused. Consequently, this assignment of error lacks merit.

*Assignments of Error Nos. 2 and 3*:

Next, 4-Aces PM maintains that the sale document is enforceable, despite its formality deficiency, because it was acknowledged by all parties in open court as having been signed by them. 4-Aces PM cites La. C.C. arts. 1834 and 1836 and argues that if a party acknowledges signing a document that is at issue and is allegedly not in authentic form, either before the court or before a notary, it is the law between the parties. Although the trial court found that there was no consent between the parties, 4-Aces PM also urges that this finding is contrary to the evidence presented at trial, pointing out that that the redemption clause contained in the document specifically used the word "purchase" and that there was a "purchase" made. 4-Aces PM

11

asserts that the contract specified, "Anthony Bowers hereby gives Brandon Rowe sixty (60) days to purchase said property back for the amount of $36,000.00 cash."

In response, Brandon maintains that the issue related to the sales document is not merely a signature issue but rather a deception issue. He argues that he was deceived by 4-Aces PM in how the documents were prepared, the representations made to him at the time of signing, and the actions taken following the signing of the document. He urges that the evidence shows that the purpose of the agreement was to use the lakefront property as collateral to allow him time to secure a loan in order to repay his bond fee to Bowers. Brandon asserts that he never intended or agreed to sell his lakefront property to 4-Aces PM.

A sale is a contract whereby a person transfers ownership of a thing to another for a price in money. The thing, the price, and the consent of the parties are requirements for the perfection of a sale. La. C.C. art. 2349. Because a sale is a conventional obligation, a valid contract must exist. A contract is an agreement between two or more parties whereby obligations are created, modified, or extinguished. La. C.C. art. 1906. A contract is formed by the consent of the parties established through offer and acceptance. La. C.C. art. 1927. The court must find there was a meeting of the minds of the parties to constitute the requirement of consent. *Succession of Davisson*, 50,830 (La. App. 2 Cir. 12/22/16), 211 So. 3d 597, *writ denied*, 17-0307 (La. 4/7/17), 218 So. 3d 111; *Worley v. Chandler*, 44,047 (La. App. 2 Cir. 3/4/09), 7 So. 3d 38.

Consent may be vitiated by error, fraud, or duress. La. C.C. art. 1948. Fraud is a misrepresentation or a suppression of the truth made with the

intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. La. C.C. art. 1953. Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. However, this exception does not apply when a relation of confidence has reasonably induced a party to rely on the other's assertions or representations. La. C.C. art. 1954.

Fraud need only be proven by a preponderance of the evidence and may be established by circumstantial evidence. La. C.C. art. 1957. Parol evidence is permissible when error, fraud, or duress is alleged. Revision Comment (b), La. C.C. art. 1848. Even without evidence of specific statements, fraud may be proved by "highly suspicious facts and circumstances surrounding a transaction." *Succession of Davisson*, *supra*; *Skannal v. Bamburg*, 44,820 (La. App. 2 Cir. 1/27/10), 33 So. 3d 227, *writ denied*, 10-0707 (La. 5/28/10), 36 So. 3d 254.

Ultimately, the trial court concluded there was no "meeting of minds" between the parties, and Ms. Collins' testimony served to substantiate Brandon's claims that at no time did he intend to transfer ownership of the lakefront property to Bowers. The trial court found that Brandon intended to execute a contract of surety. We agree. The evidence and testimony clearly reflect that the agreement between Brandon and Bowers lacked the required consent to form a valid sales contract. Brandon clearly sought to use the property to obtain a loan from the bank in order to repay Bowers the $36,000 used to bail Brandon out of jail. However, Brandon was unable to obtain these funds given he no longer had ownership of the lakefront property, which had been transferred to 4-Aces PM through the recorded deed.

13

Bowers' actions of recording the deed as well as visiting the property and collecting rent from the tenant on the property shows he believed himself to be the owner of the lakefront property rather than simply holding the documents until such time that Brandon could repay the $36,000, which was Brandon's understanding of the agreement. These circumstances and the parties' understandings of the agreement show that Brandon and Bowers had no meeting of the minds in relation to the status of the lakefront property. As a result, we agree with the trial court's determination that the deed purporting to transfer the lakefront property from Brandon to 4-Aces PM was a relative nullity and therefore must be rescinded.

Furthermore, in its thorough written reasons for judgment, the trial court found that the recorded "Cash Sale" deed differed from the documents executed at the jail. The recorded instrument contains signatures of two witnesses, but both Brandon and Ms. Collins testified that no witnesses were present at the jail for the signing of the documents. The trial court discussed Bowers' testimony that Ms. Collins informed him to acquire two witness signatures for the document, as well as Ms. Collins' testimony denying that claim. Despite Bowers' contention that there was video footage of the jail transaction, Ms. Collins testified and the trial court concluded that no such video existed. The trial court also considered Bowers' actions to be contrary to his testimony that he only desired to be paid the $36,000 he utilized for the bond, yet he visited the lakefront property as well as informed a tenant on the property that rent should be paid to him, the new owner, indicating to the trial court that Bowers believed himself to be the owner of the lakefront property. In reference to conversations between Bowers and Ms. Collins, the trial court concluded that Bowers intended to have Ms. Collins

14

remember the execution of the jail documents "differently" from what actually occurred. These reasons led the trial court to find Bowers guilty of fraud.

Given the subsequent witness signatures appearing on the recorded deed and the testimony related to the differences between the documents executed at the jail and the deed recorded, clearly the circumstances and the facts surrounding the transaction between Brandon and Bowers are "highly suspicious." *See Succession of Davisson*, *supra*; *Skannal v. Bamburg*, *supra*. The evidence and testimony clearly show that no witnesses were present at the jail during the execution of the purported agreement, but two witness signatures appear on the "Cash Sale" deed. Ms. Collins stated she wrote the 60-day redemption agreement on the document executed at the jail, but this clause was not included in the deed recorded. These acts were clear misrepresentations or suppressions of the truth made with the intention to obtain ownership of the lakefront property. Consequently, we do not find error in the trial court's finding of fraud or its determination that the parties failed to come to a "meeting of the minds" as to the object of their contract. 4-Aces PM's second and third assignment of errors are without merit.

*Assignment of Error No. 4*:

Lastly, 4-Aces PM asserts that an award of damages and attorney fees and the imposition of costs is not justified because there was insufficient evidence presented at trial in support thereof. Brandon urges this Court to affirm the trial court's awards as supported by the evidence and testimony.

The party against whom rescission is granted because of fraud is liable for damages and attorney fees. La. C.C. art. 1958. Because the trial court found that Bowers committed fraud, it exercised its discretion in

15

awarding $3,000 in damages and $10,000 in attorney fees to Brandon in compliance with the statute. We see no abuse of discretion in this matter and affirm the trial court's determination. As a result, 4-Aces PM's fourth assignment of error lacks merit.

## CONCLUSION

For the reasons set forth above, the judgment of the trial court in favor of the plaintiff, Brandon Rowe, and against the defendant, 4-Aces Property Management, LLC, rescinding the cash sale deed between the parties, awarding damages and attorney fees to the plaintiff, Brandon Rowe, and assessing court costs to the defendant, 4-Aces Property Management, is affirmed. Costs of this appeal are assessed to the defendant, 4-Aces Property Management, LLC.

**AFFIRMED.**